No. 90-011

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

SAMUEL J. GRENZ,

      Plaintiff and Appellant,

  -vs-

MICHAEL C. PREZEAU and
TERRY N. TRIEWEILER,

      Defendants and Respondents.

FILED
'90 SEP 11 PM 1 39
ED SMITH CLERK
MONTANA SUPREME COURT

APPEAL FROM:   District Court of the Eleventh Judicial District,
               In and for the County of Flathead,
               The Honorable Michael J. Keedy, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Samuel J. Grenz, Whitefish, Montana, Pro Se

      For Respondents:

      Terry Trieweiler, Esq., Whitefish, Montana
      Michael C. Prezeau, Esq., Whitefish, Montana
      Todd Hammer, Esq., Kalispell, Montana

Submitted on Briefs:  August 23, 1990

Decided:  September 11, 1990

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

On September 29, 1989, Samuel J. Grenz filed this action in the District Court of the Eleventh Judicial District, Flathead County, Montana, alleging that attorney Michael C. Prezeau had negligently represented him in connection with his workers' compensation claim. Grenz further alleged that attorney Terry N. Trieweiler was a partner of Prezeau and was vicariously liable for Prezeau's negligent conduct. On December 27, 1989, the District Court granted the motions of Prezeau and Trieweiler for summary judgment. From this judgment Grenz appeals. We affirm.

Appellant presents the following issues:

1. Did the District Court err in granting respondents' summary judgment motions?

2. Did the District Court err in failing to find that at the time of the alleged misconduct respondents were partners by estoppel?

On August 22, 1984, Samuel Grenz injured his right elbow while working for American Stud Company. He sought treatment from a physician and continued to work until November 18, 1985, when he quit because of pain in both elbows and his lower back.

On April 15, 1986, Grenz employed the Trieweiler Law Firm to represent him in connection with his workers' compensation claim. At that time, attorneys Michael Prezeau and Terry Trieweiler were partners in the Trieweiler firm. Prezeau, who signed the employment agreement with Grenz, handled all aspects of Grenz's

claim.

On October 1, 1987, Trieweiler and Prezeau terminated their partnership agreement. Prior to the dissolution of the partnership, Trieweiler had met with Grenz on two occasions and had not provided any services on Grenz's behalf. Trieweiler had no contacts with Grenz subsequent to the partnership dissolution. After the partnership was dissolved, Prezeau continued to represent Grenz.

The events in issue occurred during the first three months of 1988. On January 19, 1988, the attorney for the workers' compensation insurer requested an independent medical examination of Grenz to be performed in Kalispell by Northwest Medical Panel, a group of multi-disciplinary medical specialists. When informed of the request, Grenz immediately agreed to participate. The Panel consisted of a neurologist, an orthopedic surgeon, a physical medicine and rehabilitation specialist, and a clinical psychologist.

On January 22, Prezeau sent a schedule of his medical appointments for the panel evaluation to take place February 1 and 2. In the letter, Prezeau advised Grenz that the Medical Panel should have access to the records of Grenz's treating physicians, Dr. Herbert Gray, a psychiatrist, and Dr. Janice Gray, a pain management specialist. Prezeau asked Grenz "to contact both Drs. Gray next week and give them authorization to discuss your case with the doctors from the medical panel and to provide written information as may be requested."

A few days later, on January 25, Prezeau received a letter from Skip Schloss, who coordinated the Panel, requesting medical summaries from Dr. Herbert Gray and Dr. Janice Gray, as well as suggesting that a report from Dr. Arvin Wilson, a chiropractor, be submitted. Prezeau sent a copy of Schloss' letter to Grenz and again recommended that Grenz contact Dr. Herbert Gray and Dr. Janice Gray, but noted that he did not see a need to involve Dr. Wilson. Grenz did not contact any of the doctors as requested by Prezeau.

As evidenced by Medical Management Northwest's Treatment History Chart Review, the Medical Panel did have access to records of Dr. Janice Gray through December 1987. In addition, the Medical Panel possessed brief summarizations of the number of treatments Grenz received from Dr. Herbert Gray and Dr. Wilson. Pursuant to ARM 24.29.1405, physicians who treat an injured worker under the Workers' Compensation Act must provide reports to the insurer on request. The insurer's attorney furnished these records to the Medical Panel.

The Medical Panel diagnosed Grenz as having lumbar degenerative disease attributable to work-related injuries as well as to Grenz's weight lifting avocation. The Panel felt that this condition was at "maximum medical improvement" and that Grenz needed no further medical treatment. In addition, the Medical Panel found x-ray evidence of calcification and bone formation in Grenz's elbow and again traced the condition to his work injury and aggravation from his weight-lifting activities. Based on these

4

back and elbow injuries, the Panel rated Grenz's impairment as ten percent of the whole man.

In relation to psychological difficulties, the Panel found that Grenz no longer suffered from acute depression related to his work injuries, and that the psychologist's diagnosis of a personality disorder and learning disability were not work-related. The Medical Panel deferred to Grenz's own psychiatrist, Dr. Gray, for a psychiatric impairment rating, "should one be required."

In reviewing Grenz's suitability for five occupations submitted by Jeannette Stangl, Vocational Rehabilitation Specialist, the Medical Panel approved the job of Photograph Finisher.

Prezeau sent Grenz a copy of the Panel Summary when he received it and invited Grenz to meet with him on March 2 to discuss the evaluation. Grenz strongly objected to the Medical Panel's evaluation and insisted that Prezeau take immediate action. Prezeau explained that the Panel's evaluation was not entirely unfavorable, especially since the Panel deferred to Grenz's own psychiatrist for consideration of his psychological condition and counseled against taking any immediate action.

Grenz sent a letter to the insurer detailing numerous objections, including: (1) the Panel's diagnosis overlooked many of his work-related injuries; (2) the examination did not properly address his mental and emotional state; (3) he was not informed by his attorney of the need for obtaining various records and x-rays;

5

and (4) one of the physicians had consulted records of Grenz obtained from his associate without Grenz's consent.

On March 23, Grenz terminated Prezeau's employment and undertook his own legal representation. Until that time Grenz had received temporary total disability benefits at the maximum statutory rate. In August 1988, the benefits were reduced to permanent partial disability status. At that point, Grenz retained another attorney, and due to the second attorney's efforts, Grenz's temporary total disability status was reinstated. Grenz continues to receive biweekly benefits at the maximum rate.

I

Did the District Court err in granting respondents' summary judgment motions?

Grenz filed his second amended complaint on November 28, 1989. His allegations are summarized as follows: (1) Prezeau conspired with the insurer's attorney to limit the Northwest Panel Medical Evaluation "to such an extent as to deny Plaintiff his legal entitlements;" (2) Prezeau and Trieweiler "did not properly advise and represent" Grenz or his interests; and (3) Prezeau and Trieweiler "with actual fraud and/or malice, conspired and/or neglected to attempt in good faith to effectuate prompt, fair and equitable settlement of Plaintiff's Claim."

On the basis that the facts did not support Grenz's allegations, Prezeau and Trieweiler moved for summary judgment.

A court grants summary judgment when no genuine issue exists

6

as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; Blaskovich v. Noreast Development Corp. (Mont. 1990), 790 P.2d 977, 978, 47 St.Rep. 740, 742; Boles v. Simonton (Mont. 1990), 790 P.2d 977, 978, 47 St.Rep. 793, 796. The moving party through supporting affidavits first must demonstrate that a genuine issue of fact does not exist. The burden then shifts to the party opposing the motion to show that there were genuine issues for trial. Rule 56(e), M.R.Civ.P.; Blaskovich, 790 P.2d at 978, 47 St.Rep. at 742.

Grenz failed to meet his burden of supporting his accusations. Grenz's claim of conspiracy is based upon the conclusions that: (1) the insurer's attorney improperly influenced the Medical Panel, and (2) that Prezeau must have known about it.

Grenz's evidence consists of a letter sent by the insurer's attorney to Skip Schloss, the coordinator of Medical Management Northwest, on February 17, 1988, requesting the following:

> As you and I have discussed, I am asking that the Panel physicians limit their evaluation of Mr. Grenz to his physical condition and his physical restrictions affecting employment, to the exclusion of any psychological factors affecting Mr. Grenz. This will permit the medical doctors on the Panel to limit their opinions to their areas of expertise.

Grenz asserts that this letter represents an improper attempt on the part of the insurer's attorney to limit the scope of the Panel's examination and that Prezeau colluded with the insurer's attorney to prevent the Panel from considering all of Grenz's disabilities.

7

Insurers can request that claimants submit to physical examinations pursuant to § 39-71-605, MCA. The statute provides no guidelines for the examination other than that consideration will be given for the claimant's convenience, physical condition, and ability to attend. Aside from those requirements, the insurer is free to choose who will conduct the examination and where and when the examination takes place. The statute does not address whether the insurer is entitled to limit the examination in any way.

Under § 39-71-605, MCA, the claimant has no authority to object to or control any aspect of the examination, other than that he may have a physician present during the examination. On the other hand, the claimant's failure to cooperate with the examination could result in suspension of benefits. Section 39-71-605(1)(b), MCA (1983).

Though the Medical Panel may have overlooked some of Grenz's physical injuries or his psychological condition, prior to the examination Prezeau could do little to remedy the situation. Should a medical examination result in denial or reduction of benefits, the claimant can challenge the insurer's action through a mediation procedure or in a hearing before the workers' compensation judge. See § 39-71-240(1), MCA (1989); § 39-71-2905, MCA (1983). After his benefits were reduced, the attorney Grenz subsequently hired did take these steps, resulting in restoration of full benefits to Grenz.

Even if the insurer's actions in limiting the examination were

8

improper, Grenz did not present any evidence that Prezeau had knowledge of the insurer's request before he received, on the day that the Medical Panel compiled the Panel Summary, a copy of the letter sent by the insurer's attorney. The letter does not mention Prezeau nor implicate him in any way. Grenz's charge of a conspiracy between the two attorneys is completely unfounded.

Grenz's second allegation is that Prezeau did not properly represent Grenz. Grenz claims that Prezeau fell short in his representation of Grenz by failing to have all of his medical records and x-rays sent to Medical Management Northwest, by not requesting a second independent medical examination, and by not taking steps to correct job classifications.

One of Grenz's principal complaints is that the Panel did not have records regarding his mental and emotional condition, and that if the Panel had had these records, the Panel's evaluation would have been more favorable to Grenz.

First of all, Grenz is correct that the Medical Panel should have had those records. However, the record indicates that Prezeau sent two letters to Grenz asking him to authorize the release of information from Dr. Herbert Gray, his psychiatrist, and Dr. Janice Gray. Grenz did not follow through with his requests. Prezeau testified that he requested Grenz to contact his treating physicians, rather than getting a release and having the records sent to himself, because of Grenz's extreme sensitivity about release of medical information. Grenz's protest to the Panel regarding the use by one physician of his partner's records

demonstrates his sensitivity in this area.

Secondly, although a psychologist on the Panel did examine Grenz, the Panel deferred to Grenz's own physician, Dr. Gray, for a psychiatric impairment rating. Prezeau pointed out that the fact that the Panel deferred to Dr. Gray was favorable to Grenz.

We also note that the Medical Panel had access to most of Grenz's records and x-rays from other sources.

As for requesting a second medical examination and objecting to the job classification of photograph finisher, Prezeau was aware of Grenz's wishes for quick action, but in his professional judgment counseled against taking any immediate steps. In order to determine whether Prezeau in this instance departed from the prevalent standard of care, Grenz needed either expert testimony or Prezeau's own testimony identifying his conduct as negligent. Carlson v. Morton (1987), 229 Mont. 234, 239, 745 P.2d 1133, 1136. Grenz provided neither.

Grenz contends that Prezeau failed to request a second examination within two weeks from the mailing of the evaluation as required by § 39-71-711(3)(b)(i), MCA. The statute in effect on the date of injury governs workers' compensation benefits. Buckman v. Montana Deaconess Hospital (1986), 224 Mont. 318, 321, 730 P.2d 380, 382. Section 711 of the Workers' Compensation Act did not take effect until July 1, 1987. Since Grenz's injury occurred in 1984, § 39-71-711, MCA, does not apply.

Grenz's third allegation is that Prezeau failed to effectuate a prompt and equitable settlement of his claim. Grenz's own

10

affidavit filed in opposition to the Motion for Summary Judgment refutes this assertion:

> The very first day, when I retained the Defendants I told Terry Trieweiler that I never, never intend to settle my Workers' Compensation Claim and that all I wanted to do is, to go to school and reeducate myself so I could get on with my life. . . . On November 13th, 1986, I again told the Defendants that I don't want to settle my Workers' Compensation Claim, I just want to go to school and rehabilitate myself.

Obviously, Grenz cannot charge the defendants with failing to settle his claim when he himself directed otherwise.

In addition to showing that no genuine issue of material fact exists, the party moving for summary judgment must establish that he is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; Blaskovich, 790 P.2d at 979, 47 St.Rep. at 742.

In this case, the defendants had to show that at least one of the elements of a legal malpractice action were not satisfied because no genuine issue of fact supporting the element existed.

In a malpractice action, the plaintiff must prove that an attorney-client relationship existed and that the act constituting negligence or breach occurred. The plaintiff must show that "but for" such negligence the client would have been successful in the prosecution or defense of the action. Lorash v. Epstein (1989), 236 Mont. 21, 24, 767 P.2d 1335, 1337. Finally, the plaintiff must establish that the negligent act proximately caused his damages. Thelen v. City of Billings (1989), 238 Mont. 82, 85-6, 776 P.2d 520, 523-24.

As a matter of law, Prezeau is entitled to summary judgment

11

because of the absence of facts indicating that he negligently handled Grenz's legal affairs. Furthermore, Grenz has not indicated, beyond mere allegations, actual damages or injury. Grenz claims that the defendants' tortious conduct prevented him from "rising above his disability" and preparing himself for meaningful employment, as well as contributing to Grenz's "present condition of permanent total disability."

No facts support these allegations. In fact, the record shows the opposite--that during the entire time that Prezeau and his firm represented him, Grenz received the maximum workers' compensation benefits allowable by law. His benefits were reduced temporarily, but not until some months after Prezeau's representation of Grenz had been terminated.

We hold that plaintiff failed to demonstrate any genuine issue of material fact and that defendants were entitled to summary judgment as a matter of law.


II

Did the District Court err in failing to find that at the time of the alleged misconduct respondents were partners by estoppel?

The facts are uncontroverted that Trieweiler did not provide any legal services for Grenz and that Trieweiler and Prezeau dissolved their partnership on October 1, 1987, three months before the events in question occurred. Since we find that Prezeau is absolved of liability, Trieweiler cannot be held liable for Prezeau's conduct. Therefore, we need not address the second issue

12

of whether a partnership by estoppel existed between Prezeau and Trieweiler at the time of the alleged negligence.

The District Court's grant of summary judgment to Prezeau and Trieweiler is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

13