# CURTIS V. UHLER,
Plaintiff and Appellant,
v.
# JON E. DOAK,
Defendant and Respondent.

No. 93-651.
Submitted September 13, 1994.
Decided December 13, 1994.
51 St.Rep. 1315.
268 Mont. 191.
885 P.2d 1297.

For Appellant: **Larry Jent** (argued), Williams, Jent & Dockins, Bozeman.

For Respondent: **George C. Dalthorp** (argued) and **Neil G. Westesen**, Crowley, Haughey, Hanson, Toole & Dietrich, Billings.

JUSTICE TRIEWEILER delivered the Opinion of the Court.

Plaintiff Curtis V. Uhler filed his complaint in the District Court for the Thirteenth Judicial District in Yellowstone County on June 1, 1992. He alleged that during 1989, defendant Jon E. Doak, an attorney, had performed legal services for him negligently, and that as a result, he sustained damages. Doak moved for dismissal of the complaint by summary judgment based on his contention that it was barred by the statute of limitations found at § 27-2-206, MCA. The District Court granted Doak's motion and Uhler appeals. We reverse the judgment of the District Court.

The issue on appeal is whether the statute of limitations for an action based on the negligence of an attorney can begin to run before the cause of action accrues.

## FACTUAL BACKGROUND

In May 1986, Curtis V. Uhler went to work for Billings Orthopedic, Inc., as manager of its orthotics division. The principal shareholders in the corporation were Douglas and Linda Hakert.

On December 22, 1986, Uhler and the Hakerts signed a formal shareholders agreement pursuant to which the Hakerts agreed to sell 5500 shares (one-third of the total number) to Uhler. The value assigned to the shares was $150,000. On that same date, the parties signed an employment agreement in which the corporation agreed to pay Uhler $45,000 a year, plus an annual bonus based on a percentage of the orthotic division's profits. However, a provision in the employment agreement provided that the bonus could be applied by the corporation to Uhler's debts.

On May 28, 1987, Uhler and the Hakerts signed a formal stock purchase agreement which set forth the terms of his payment for the

corporation's stock. He agreed to pay $30,000 at the time the agreement was executed, and also provided a promissory note which obligated him to monthly payments of $2520.13, and interest on the balance due at the rate of nine and one-half percent per annum. The balance of the $150,000 purchase price was due five years from the date of the agreement.

The shareholder agreement which had been executed by the parties in December of 1986 provided that in the event of Uhler's termination of employment from the corporation, the corporation would buy back his shares of stock at a price to be calculated based on a formula set forth in the agreement.

During the course of the parties' business relationship, a dispute arose regarding bonuses, which Uhler contended were due him, but which the Hakerts contended could be properly credited against his obligation under the stock purchase agreement. Uhler became concerned about the Hakerts' use of corporate funds for personal expenses, and a lack of cash with which to pay suppliers on a timely basis; and also objected to a number of the Hakerts' business practices which he felt reflected negatively on his professional reputation. Therefore, by April 1989, Uhler decided it would be in his best interest to terminate his business relationship with the Hakerts.

On May 11, 1989, Uhler first met with Jon Doak. He retained him as an attorney and consulted him for advice regarding termination of his employment relationship and what rights he had under the shareholders agreement to have his stock repurchased by the corporation. By that time, he had invested approximately $90,000 in the stock; he owed a balance of approximately $60,000 for the stock; and the value of the stock was approximately $210,000. According to Uhler's deposition testimony, he told Doak that he "wanted out of this deal, and [he] wanted [his] money back."

Uhler and his wife, Cheryl, met with Doak on five occasions in May 1989, and on approximately seven occasions in June 1989, to discuss Uhler's options and negotiate the terms of the termination of his employment with Billings Orthopedic, Inc.

Doak's initial advice to Uhler, which the parties agree was communicated by at least May 16, was that to compel the corporation to buy back his stock would require a lawsuit which would be lengthy and very expensive, and that the corporation may not have sufficient assets with which to satisfy any ultimate judgment. Therefore, it was Doak's recommendation that the effort to recover Uhler's investment in the corporation's stock was not a viable alternative.

Both Mr. and Mrs. Uhler were dissatisfied with Doak's initial advice. Therefore, Doak continued to gather information which would either confirm or disprove his initial impression. His billing notes indicate that from May 19 through June 7 he met with the Hakerts' accountant and Uhler's accountant, or talked to them by telephone, on three occasions. During that time, he also gathered financial statements for the corporation and obtained copies of the escrow documents which reflected Uhler's payments to the corporation for his stock purchase.

Armed with the results of his investigation, Doak and Uhler met with the Hakerts and their accountant on June 7. As a result of that meeting, Doak apparently renewed his recommendation that Uhler not attempt to compel the corporation to buy back its stock as part of any termination arrangement.

On June 14, Doak drafted a letter to the Hakerts from Uhler which set forth terms for termination which would be agreeable to Uhler. The letter was dated, signed, and sent by Uhler on June 16, 1989. In the letter, the Hakerts were advised that Uhler was resigning from his employment with Billings Orthopedic, Inc., effective Friday, June 30, 1989. He stated that he expected to be paid his salary through June 30, but offered to transfer all of his stock to the Hakerts in exchange for a release from any further obligation under the stock purchase agreement dated May 28, 1987. He also agreed to waive any claim for bonuses which accrued prior to June 30 but had not been paid. In the letter, Uhler specifically offered to release the Hakerts and the corporation from any obligation to repurchase his stock under the terms of the shareholder agreement dated December 22, 1986.

The terms offered in Uhler's June 16 letter were apparently acceptable to the Hakerts, and a termination agreement setting forth those basic terms was executed by the parties on June 22, 1989.

On some date subsequent to the termination of his attorney/client relationship with Doak, Uhler concluded that the termination agreement had been ill-advised, and retained other counsel. On June 1, 1992, this complaint was filed in which Uhler alleged that Doak was negligent in his representation of and advice to Uhler, and that as a result of that negligence, Uhler lost his stock, his accrued bonuses, and the entire value of his investment in Billings Orthopedic, Inc.

Doak appeared and answered the complaint. He admitted that he had represented Uhler through June 1989, but denied that he did so negligently.

Following the depositions of the parties, Doak moved the District Court to dismiss the complaint against him based on his argument that it was barred by the statute of limitations set forth at § 27-2-206, MCA. In support of his motion, Doak alleged that his office notes establish that he met with the Uhlers on May 16, 1989, and gave them the basic advice about which they now complain. He argued that since that advice was basically unchanged throughout the remainder of his representation, Uhler's cause of action, if any, arose on that date because that was the date on which he first had knowledge of the facts essential to his cause of action. In other words, it was Doak's position, with which the District Court agreed, that the statute of limitations applicable to Uhler's cause of action began to run when his advice was initially given, and therefore, had expired by June 1, 1992, which was more than three years from that date. In support of his position, Doak relied on this Court's decisions in *Rouane v. Lynaugh* (1993), 259 Mont. 171, 855 P.2d 114; *Boles v. Simonton* (1990), 242 Mont. 394, 791 P.2d 755; *Peschel v. Jones* (1988), 232 Mont. 516, 760 P.2d 51; and *Schneider v. Leaphart* (1987), 228 Mont. 483, 743 P.2d 613.

The District Court held that Uhler's claim was based on advice given by Doak prior to June 1, 1989, and that according to the case law relied on by Doak, discovery of damages was not a prerequisite to the running of the statute of limitations. The District Court did not address whether damages necessarily had to be incurred before the statute of limitations began to run.

## DISCUSSION

The issue on appeal is whether the statute of limitations for an action based on the negligence of an attorney can begin to run before the cause of action accrues.

Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. Our review of a summary judgment order is *de novo. Minnie v. City of Roundup* (1993), 257 Mont. 429, 431, 849 P.2d 212, 214. We review a summary judgment utilizing the same criteria applied by the district court under Rule 56. *Minnie*, 849 P.2d at 214.

We conclude that the District Court erred when it held that the period of limitation within which a cause of action must be commenced begins to run before the cause of action accrues. Section 27-2-102(2), MCA, provides that:

Unless otherwise provided by statute, the period of limitation begins when the claim or cause of action accrues. Lack of knowl-

edge of the claim or cause of action, or of its accrual, by the party to whom it has accrued does not postpone the beginning of the period of limitation.

Section 27-2-102(1)(a), MCA, provides that:

A claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action ....

The complaint in this case set forth a claim of professional negligence by an attorney. We have previously set forth the necessary elements for such a claim. In *Grenz v. Prezeau* (1990), 244 Mont. 419, 426, 798 P.2d 112, 116, we noted that:

In a malpractice action, the plaintiff must prove that an attorney-client relationship existed and that the act constituting negligence or breach occurred. The plaintiff must show that "but for" such negligence the client would have been successful in the prosecution or defense of the action. *Lorash v. Epstein* (1989), 236 Mont. 21, 24, 767 P.2d 1335, 1337. Finally, the plaintiff must establish that the negligent act proximately caused his damages. *Thelen v. City of Billings* (1989), 238 Mont. 82, 85-86, 776 P.2d 520, 523-24.

Stated more simply, we have held that:

[I]n order to establish a cause of action for legal malpractice, there must be a showing that the attorney owed his client a duty of care, that there was a breach of this duty by a failure to use reasonable care and skill, and that the breach was the proximate cause of the client's injury and resulted in damages.

*Merzlak v. Purcell* (1992), 252 Mont. 527, 529, 830 P.2d 1278, 1279-80.

■ Uhler's claim is that as a result of negligent advice given to him during May and June 1989, he was led to believe that it was in his best interest to sign a resignation letter which was sent on June 16, and a termination agreement, which was executed on June 22. His contention is that as a result of the terms set forth in that letter and agreement, he waived rights to bonuses and repurchase of his stock, and sustained substantial monetary damages. Prior to publication of the letter and execution of the agreement, he sustained no damages, and therefore, had no cause of action for professional negligence against Doak. Since his cause of action had not accrued, according to § 27-2-102(1), MCA, sooner than June 16, the statute of limitations did not commence to run pursuant to subparagraph (2) earlier than that date.

Since at least some of our prior case law is arguably inconsistent with this result, the following discussion is for the purpose of sum-

marizing our decisions in this area of the law and clarifying, distinguishing, or reversing them where necessary.

The seminal language which discusses the statute of limitations for attorney negligence, and upon which subsequent cases are based, is found in *Schneider v. Leaphart* (1987), 228 Mont. 483, 743 P.2d 613. In that case, the defendant attorney prepared a property settlement agreement which became part of a dissolution decree entered on November 3, 1979. The agreement provided for payment of maintenance over a period of time which the husband learned, on December 4, 1981, was longer than necessary. He attempted to negotiate a modification of the agreement with his wife, but was unsuccessful. Therefore, the husband filed a claim against his attorney on March 27, 1985, in which he alleged that the attorney had been negligent by advising him that the longer schedule of maintenance payments was necessary for tax purposes. The complaint was filed more than three years after the decree was entered, and more than three years after the husband obtained advice from his accountant that the longer maintenance schedule was unnecessary for tax purposes.

The complaint was dismissed by summary judgment based on the bar of the statute of limitations set forth at § 27-2-206, MCA. On appeal, the plaintiff alleged that the statute of limitations did not begin to run until he "discovered" all the elements of his claim, including damages. He alleged that since he did not discover his damages until he learned that the maintenance award was a lien on his property in February of 1984, his claim was timely. We referred to the position being advocated by the plaintiff in that case as the "damage rule," and held that under our statute of limitations, the time within which to file a complaint is not tolled by failure to discover damages. We held that the only tolling provided for in our statute was by the failure to discover the conduct which caused damages. However, that opinion had nothing to do with a situation where damages have not even been sustained. In fact, we held that the plaintiff's damages were sustained when the decree of dissolution was entered and became an enforceable judgment and that he was charged, at least, with constructive knowledge of his damage at that time. We held that he had actual knowledge of his damage no later than the date on which he received the opinion from his accountant. *Schneider* is not authority for the conclusion arrived at by the District Court in this case.

In *Peschel v. Jones* (1988), 232 Mont. 516, 760 P.2d 51, the plaintiff hired his attorney to assist him with financing difficulties in a

construction project he was undertaking. As a result, his attorney prepared an agreement on November 10, 1979, which, according to the plaintiff, was negligently prepared and caused additional construction costs. The plaintiff sued his attorney on November 14, 1985, for professional negligence. The district court dismissed the plaintiff's claim based on the statute of limitations. However, on appeal he contended that while he knew of all the facts which were the elements of his claim, he did not know that the acts constituted negligence until an unfavorable district court judgment was entered against him on January 25, 1984. For purposes of this case, the important distinction is that the plaintiff in that case did not allege that necessary elements of his claim had not occurred prior to that date. We reaffirmed our rejection of the "damage rule," which postpones running of the statute until "discovery" of a plaintiff's damages. We did not reject § 27-2-102(2), MCA, which postpones running of the statute until a cause of action accrues. Therefore, our holding in *Peschel* is not inconsistent with our holding in this case.

Our first seeming departure from the statutory rules upon which this decision is based occurred in *Boles v. Simonton* (1990), 242 Mont. 394, 791 P.2d 755. In that case, the plaintiffs hired the defendant attorney to prepare a contract for deed to cover the purchase of a service station in a small town in eastern Montana. The contract was executed on September 22, 1978, and contained a default clause which allowed the seller to accelerate payments in the event of a late payment, and terminate the contract in the event that the balance was not paid on the accelerated due date. In the event they were unable to pay the balance on the contract, the buyers forfeited all rights under the contract. The plaintiffs had difficulty making payments under the contract in 1982 and 1983, more than three years after it was executed, the seller declared the entire balance due within 90 days, and when plaintiffs were unable to pay that amount, the property was repossessed.

In 1986, the plaintiffs sued Simonton based on their allegation that he had negligently drafted the contract by deleting a "saving clause" which would have allowed them to make up late payments prior to acceleration. However, the district court concluded that the cause of action accrued when the contract was signed, and dismissed the plaintiffs' complaint based on the statute of limitations. On appeal, we correctly cited *Burgett v. Flaherty* (1983), 204 Mont. 169, 663 P.2d 332, for the principle that:

As a matter of law, what is critical in determining when a legal malpractice action accrues is knowledge of the facts essential to the cause of action, not knowledge of the legal theories upon which an action may be brought.

*Burgett*, 663 P.2d at 334 (citing *McGee v. Weinberg* (Cal. App. 1979), 97 Cal. App. 3d 798, 159 Cal. Rptr. 86).

According to the authorities previously cited, "the facts essential to the cause of action" included at least a breach of the attorney's duty to use reasonable care, and damages as a proximate result of that breach. In other words, the plaintiffs in *Boles* could not have commenced a cause of action against their attorney at any time prior to their default under the contract because they had sustained no damage. If they had, their claim could have been appropriately dismissed. However, in spite of our correct citation to the rule in *Burgett*, we went on to conclude in *Boles* that the plaintiffs were charged with knowledge of the contract's content when they signed it, and that "the rule that the statute is not triggered until the client is damaged has been expressly rejected in Montana, as in conflict with the statute." *Boles*, 791 P.2d at 759. We cited *Schneider* as authority for that conclusion.

In effect, we held that Boles' cause of action was barred by the statute of limitations before it ever accrued, and misapplied our holding in *Schneider*. As mentioned previously, that case was not concerned with a fact situation where damages had not been sustained. The issue was whether the statute was tolled where damages had been sustained, but not yet discovered.

Our decision in *Boles* is inconsistent with our statutory law relating to statutes of limitations, and inconsistent with the prior decisions upon which it relied. The purpose of the three-year limitation found at § 27-2-206, MCA, is to bar stale claims against attorneys. The purpose is not to bar claims before they even arise. Therefore, to the extent that our decision in *Boles* is inconsistent with our holding in this case, our statutory laws, and our prior case law, it is reversed.

Finally, we decided *Rouane v. Lynaugh* (1993), 259 Mont. 171, 855 P.2d 114. In that case, plaintiffs were injured as a result of an accident which occurred while they were aboard an Eastern Airlines aircraft. They retained the defendant attorney to represent them, and he filed a complaint on their behalf on October 30, 1986. On November 30, 1987, the airline filed its answer and set forth the affirmative defense that the claim was barred by a two-year statute of limitations based on the Warsaw Convention. Shortly thereafter the plaintiffs retained

another firm and terminated the services of their Montana attorney. Based on notice of the airline's defense, and apparently on the advice of other counsel, they filed a complaint with the Commission on Practice on May 30, 1988, indicating that their Montana attorney may have "blown the statute of limitations."

The plaintiffs' claim against the airline was dismissed in Florida on October 3, 1988, and dismissed in Federal District Court in Montana on December 14, 1989, based on the bar of the statute of limitations. They then sued their Montana attorney on June 4, 1991. However, that suit was dismissed based on the statute of limitations pertaining to claims of attorney negligence, and we affirmed the district court.

On appeal, the plaintiffs contended that they were not aware of their damages until the Florida court granted the airline's motion for summary judgment on October 4, 1988, and therefore, that their action was timely. We affirmed the district court based on our conclusion that the plaintiffs had discovered their cause of action by at least May 30, 1988, when they wrote to the Commission on Practice, and therefore, that their claim filed more than three years later was barred by the statute of limitations.

Although we cited and relied on *Boles* in arriving at our conclusion in *Rouane*, *Rouane* is distinguishable from *Boles*, and from the facts in this case. The elements of the Rouanes' cause of action, if any, accrued when the time for filing their complaint against the airline expired sometime prior to October 30, 1986. By that time, the statute had expired and the plaintiffs were barred from suing the airline. All the elements of the Rouanes' claim against their Montana attorney existed, and therefore, the cause of action had accrued. The fact that some court had not formally dismissed their claim against the airline simply related to the issue of whether they had notice of their damage, not whether it had occurred. Therefore, our holding in *Rouane* is consistent with our decisions in *Schneider*, *Peschel*, and this case.

For these reasons, we conclude that Uhler's cause of action against Doak did not accrue until June 16, 1989, at the earliest. This is the date on which Uhler first acted on Doak's advice to his alleged detriment, and prior to this date, he had no cause of action as a matter of law. Therefore, we conclude that June 16, 1989, is the earliest date from which the statute of limitation pertaining to Uhler's claim could begin pursuant to § 27-2-102(2), MCA. The District Court's order dismissing plaintiff's claim by summary judgment is reversed and

this case is remanded to the District Court for further proceedings consistent with this opinion.

JUSTICES HARRISON, HUNT, GRAY and NELSON concur.

JUSTICE WEBER dissents as follows:

As stated in the majority opinion, the issue is whether the statute of limitation for an action against an attorney based on that attorney's alleged professional negligence, begins to run before the cause of action accrues. The issue is stated in that manner because the majority opinion relies on § 27-2-102(2), MCA, which in substance provides that the period of limitation begins when the "cause of action accrues." In addition it relies on § 27-2-102(1)(a), MCA, which provides that a cause of action accrues when all elements of the cause exist or have occurred. I disagree with the analysis of the issue before us.

I believe the issue is whether or not the cause of action is barred under the provisions of § 27-2-206, MCA, which applies to actions for legal malpractice only and states as follows:

**Actions for legal malpractice.** An action against an attorney licensed to practice law in Montana or a paralegal assistant or a legal intern employed by an attorney based upon the person's alleged professional negligent act or for error or omission in the person's practice must be commenced within 3 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the act, error, or omission ...

The majority opinion does not analyze the initial language of § 27-2-102(2), MCA, which provides:

*Unless otherwise provided by statute*, the period of limitation begins when the claim or cause of action accrues ... (Emphasis supplied.)

It is § 27-2-102(2), MCA, upon which the majority opinion relies when it concludes that the plaintiff's cause of action did not accrue until June 16, 1989, when plaintiff first acted on defendant's advice to his alleged detriment—prior to that date he had no cause of action as a matter of law. This analysis in the majority opinion has failed to consider the key wording in the statute upon which it relies—"unless otherwise provided by statute" the period of limitation begins when the cause of action accrues. In the case of actions for legal malpractice, there is a specific statute which otherwise provides. I therefore conclude that § 27-2-102(2), MCA, is specifically *not* applicable in this case.

Clearly, § 27-2-102(2), MCA, is a provision by the legislature which applies only when it has not otherwise been provided by statute. The

legislature here has specifically provided otherwise by statute in enacting § 27-2-206, MCA, which sets the statute of limitation for actions for legal malpractice. I conclude there is no proper basis under which the majority opinion can rely on §§ 27-2-102(2) and 27-2-102(1)(a), MCA. I therefore disagree with both the analysis and the conclusion of the majority opinion.

I further point out that the majority opinion appears to have adopted "the damage rule" without specifically so stating. In the case of *Boles v. Simonton* (1990), 242 Mont. 394, 398, 791 P.2d 755, 757, this Court analyzed the occurrence rule, the damage rule and discovery rule in brief, stating:

> ... The dispositive issue in the present case is when the statute of limitations commenced to run.
>
> In analyzing this issue, we note that traditionally the general rule has been that a cause of action for attorney malpractice accrues when the negligent act or breach occurs, not when it is discovered (the occurrence rule). 54 C.J.S. Limitations of Actions, § 172 (1987). Other theories include: 1) the statute of limitations begins to run *when the client has sustained injury or damage (the damage rule)*; 2) the statute begins to run *when the negligent act is discovered or should have been discovered (the discovery rule)*. Annotation, "When Statute of Limitations Begins to Run upon Action Against Attorney for Malpractice" 32 ALR 4th 260 § 2 (1984).
>
> *Montana has statutorily adopted the discovery rule*, stated in § 27-2-206, MCA ... (Emphasis supplied.)

In analyzing *Boles*, the majority opinion states:

> ... the plaintiffs in *Boles* could not have commenced a cause of against their attorney at any time prior to their default under the contract because they had sustained no damage. If they had, their claim would have been appropriately dismissed. ...

In substance, the majority opinion here concludes that having sustained no damage, the statute of limitation had not begun to run. Without directly saying so, the majority apparently has thereby adopted "the damage rule" which as above stated in *Boles* points out that "the damage rule" provides that the statute of limitation does not begin to run until the client has sustained injury or damage. The majority opinion then goes on to conclude that plaintiff's cause of action did not accrue until June 16, 1989, which was the date on which the plaintiff first acted on the advice to his detriment and "prior to this date, he had no cause of action as a matter of law." Without

expressly so stating, it appears to me that the majority opinion has adopted "the damage rule".

The adoption of "the damage rule" by the majority opinion is in direct contradiction to the Montana statute, § 27-2-206, MCA, as well as in conflict with *Boles* and earlier cases which conclude that "the damage rule" is not applicable in Montana. I therefore dissent strongly to this adoption of "the damage rule" in Montana and in particular its disregard of the specific statute of limitation applicable to attorneys. As a result of this majority opinion, we now have two conflicting statute of limitation rules in Montana—the one prescribed by the legislature in its statute and "the damage rule" adopted in this opinion.

CHIEF JUSTICE TURNAGE joins in the foregoing dissent.