No. 02-140

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 143

ESTATE OF CAROLYN WATKINS,

       Plaintiff and Appellant,

  v.

HEDMAN, HILEMAN & LACOSTA,
a General Partnership, and Susan LACOSTA,
DONALD HEDMAN, and WILLIAM HILEMAN, individuals,

       Defendants and Respondents.


APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula, Cause No. DV 97-85928
The Honorable John S. Henson, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

          Lee C. Henning, Kathy M. Burch, Henning & Keedy, P.L.L.C., Kalispell, Montana

       For Respondents:

          George D. Goodrich, William Evan Jones, Garlington, Lohn & Robinson, PLLP, Missoula, Montana


                    Submitted on Briefs:  September 26, 2002

                    Decided:  June 8, 2004

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     The Estate of Carolyn Watkins (the Estate) brought a legal malpractice action in the District Court for the Fourth Judicial District, Missoula County, to recover damages allegedly sustained as a result of attorney Susan Lacosta's negligence in drafting a will and trust for Carolyn and her husband.  The District Court granted Respondent's motion for summary judgment concluding that the Estate's action was time-barred under the three-year statue of limitations for legal malpractice.  The Estate appeals.  We reverse and remand for further proceedings consistent with this Opinion.

¶2     We address the following issue on appeal:  Whether the District Court erred in determining that the Estate's claim of legal malpractice was barred by the three-year statute of limitations for legal malpractice actions.

**Factual and Procedural Background**

¶3     Carolyn and Stanley Watkins were a married couple whose varied business holdings included a substantial interest in Watkins-Shepherd Trucking as well as vending businesses and beverage distributorships.  Carolyn and Stanley maintained their business interests despite Stanley's worsening heart condition and his legally blind status.  For many years, the couple's estate planning consisted of simple wills drafted in 1987.  These wills provided that upon the death of one spouse, everything was to go to the survivor.  In 1991, Stanley's health deteriorated substantially and, given the size of the multi-million dollar estate, Carolyn became concerned about preserving the family assets for their children.

¶4     In 1992, Carolyn retained Susan Lacosta, an attorney whose emphasis was in estate

and tax planning, to draft an estate plan for Stanley and herself. Carolyn instructed Lacosta to draft an estate plan with the same result as the 1987 wills, but with additional protection as far as probate, privacy and with some tax advantages. Lacosta never met with Stanley, nor did she discuss the estate plan with him.

¶5 Lacosta prepared a complex estate plan with wills and several trusts pursuant to a trust agreement entitled "The Stanley L. and Carolyn M. Watkins Revocable Trust Agreement" (the Trust). Carolyn later testified that it was her desire that the Trust remain revocable so that she would retain flexibility. Carolyn also testified that she continuously asked Lacosta whether the Trust was revocable and that Lacosta assured her that it was and that it could be changed at any time. Because Stanley was ill, Lacosta sent the documents home with Carolyn and left it to Carolyn to explain the documents to Stanley and obtain his signature. Lacosta and a member of her staff subsequently "witnessed and acknowledged" Stanley's will.

¶6 Stanley died on April 7, 1992, and his will, prepared only a few months earlier, was admitted to probate. Although Stanley's 1992 will was admitted to probate with Lacosta's knowledge, Lacosta did not disclose to Carolyn or to the court that the will had been improperly executed because it was not signed in the presence of witnesses as required by § 72-2-522, MCA. Carolyn was also unaware that the Trust became irrevocable upon Stanley's death.

¶7 More than a year after Stanley's death, Carolyn instructed her local attorney, Don Lee, to sell an asset owned by the Trust. Lee contacted Lacosta for advise in understanding

3

the estate plan. Lacosta advised Lee to effect the following series of transfers: (1) Carolyn, as trustee, should transfer the asset to a separate revocable trust; (2) Carolyn, as trustee of the separate revocable trust, should then transfer the asset to herself individually, and (3) Carolyn, individually, should then sell the asset to the buyer. This series of transactions was completed on July 17, 1994.

¶8     In January 1995, during a meeting with Carolyn and her insurance and financial advisor, John Hagman, Lacosta again assured Carolyn that the Trust was revocable. Hagman had substantial experience in estate planning and he directly asked Lacosta whether the Trust created a Qualified Terminable Interest Property (QTIP) trust. Lacosta responded that the Trust agreement did not create a QTIP trust and that Carolyn could do anything she wanted with any of the Trust assets because the trust was fully revocable by her. However, on April 21, 1995, during a meeting with Carolyn and her CPA, Gary McDermott, Lacosta admitted that the Trust was an irrevocable QTIP trust.

¶9     Sometime between May and July 1995, Carolyn hired Neil McKay, an estate and tax planning attorney, to determine whether and to what extent the Trust was irrevocable. McKay testified in his deposition that the Trust would be very difficult for the average layperson to understand. In fact, he testified that even as an estate and tax planning expert, he had to spend many hours reading the Trust document before he could understand it. Sometime after July 1995, McKay confirmed that the Trust was irrevocable.

¶10    When Carolyn discovered that the estate plan prepared by Lacosta did not reflect her and Stanley's intent, she made several efforts to minimize or negate the damage. She first

4

attempted to obtain the Trust beneficiaries' cooperation in correcting the mistakes. This cooperative effort failed, so Carolyn next proceeded with legal action to have the erroneous estate plan legally modified. These efforts resulted in acrimonious and protracted litigation between Carolyn and her son, Steve Williamson, as well as some of the other Trust beneficiaries. In those cases (hereafter collectively referred to as the "Beneficiary Suits"), the District Court found Carolyn's claims to be time-barred. The court reasoned that as the personal representative of her husband's estate, Carolyn had an absolute legal duty to the beneficiaries to understand and administer the estate. It did not matter whether she in fact understood the legal documents.

¶11    Carolyn died on February 23, 1997. On December 29, 1997, her Estate brought an action to recover damages sustained by Carolyn as a result of Lacosta's negligence. Respondents moved for summary judgment based on the statute of limitations and on the doctrines of *res judicata* and collateral estoppel. On December 28, 2001, the District Court ruled that the Estate's claim was time-barred under the three-year statute of limitations. The court did not address Respondent's other arguments. Thereafter, the Estate filed a Motion to Alter or Amend the Judgment, which the District Court denied on March 4, 2002. The court's orders concluded that Carolyn should have discovered Lacosta's negligence by April 1992, and that because Carolyn sustained damages by April 1992, the Estate's claim was time-barred. The Estate appeals from these orders.

**Standard of Review**

5

¶12   Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Rule 56(c), M.R.Civ.P.  Our standard in reviewing a district court's summary judgment ruling is *de novo*.  *Johnson v. Barrett*, 1999 MT 176, ¶ 9, 295 Mont. 254, ¶ 9, 983 P.2d 925, ¶ 9 (citing *Stutzman v. Safeco Ins. Co. of America* (1997), 284 Mont. 372, 376, 945 P.2d 32, 34).  We use the same Rule 56, M.R.Civ.P., criteria applied by the district court. *Johnson*, ¶ 9.  Moreover, all reasonable inferences which may be drawn from the offered proof must be drawn in favor of the party opposing summary judgment.  *Johnson*, ¶ 8 (citing *Schmidt v. Washington Contractors Group*, 1998 MT 194, ¶ 7, 290 Mont. 276, ¶ 7, 964 P.2d 34, ¶ 7).

## Discussion

¶13   *Whether the District Court erred in determining that the Estate's claim of legal malpractice was barred by the three-year statute of limitations for legal malpractice actions.*

¶14   The Estate argues that the District Court, when rendering its orders in December 2001 and March 2002, failed to recognize the substantial legal distinctions between the Beneficiary Suits and this legal malpractice case, thus, the court improperly applied the same analysis to this case as it applied in the Beneficiary Suits.  The Estate maintains that the relationship at issue here and the legal duties inherent in that relationship are different from that adjudicated in the Beneficiary Suits.  In the Beneficiary Suits, the court reasoned that Carolyn, as the personal representative of her husband's estate, had an absolute legal duty to understand and administer the estate plan, thus the fiduciary duty ran from Carolyn to the beneficiaries.  In this legal malpractice case, the fiduciary duty runs from Lacosta to Carolyn.

6

We agree with the Estate that this distinction changes the application of the statute of limitations in this case.

¶15    The statute of limitations for a legal malpractice action provides:

>    An action against an attorney licensed to practice law in Montana or a paralegal assistant or a legal intern employed by an attorney based upon the person's alleged professional negligent act or for error or omission in the person's practice must be commenced within 3 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the act, error, or omission, whichever occurs last, but in no case may the action be commenced after 10 years from the date of the act, error, or omission.

Section 27-2-206, MCA. The Estate argues that in some circumstances, a plaintiff is not strictly bound by this three-year statute of limitations. Rather, the Estate contends that the statute begins to run upon discovery and accrual, and delayed discovery must be excused under certain circumstances.

¶16    The first issue to address when determining whether a party is barred by the statute of limitations is when the statute begins to run. In the context of legal malpractice actions, we have held that both the "discovery rule" and the "accrual rule" are statutorily binding. *Johnson*, ¶¶ 11-20 (confirming statutory adoption of "discovery rule"); *Uhler v. Doak* (1994), 268 Mont. 191, 195-200, 885 P.2d 1297, 1300-03 (confirming statutory adoption of "accrual rule").

¶17    The "discovery rule" begins the statute of limitations upon the discovery of the negligent act. Section 27-2-206, MCA; *Johnson*, ¶¶ 11-20. The "accrual rule" provides that the statute of limitations begins when all elements of a claim, including damages, have occurred. *Uhler*, 268 Mont. at 195-200, 885 P.2d at 1300-03 (adopting "accrual rule"

7

pursuant to §§ 27-2-102(1)(a) and (2), MCA). Thus, the law in Montana for legal malpractice actions is that the statute of limitations does not begin to run until both the "discovery rule" and the "accrual rule" have been satisfied. Hence, the statute of limitations in a legal malpractice action does not begin to run until the negligent act was, or should have been, discovered, *and* all elements of the legal malpractice claim, including damages, have occurred.

*Discovery Rule*

¶18    The Estate contends that its claim filed on December 28, 1997, was timely because Carolyn did not discover and should not have discovered Lacosta's negligent acts until 1995, which delay tolled the statute of limitations because of (1) the existence of a fiduciary relationship between Carolyn and Lacosta; (2) the complexity of the legal transaction; and (3) Lacosta's concealment of her negligent acts.

¶19    First, we observe that a fiduciary relationship existed between Carolyn and Lacosta. In *Shiplet v. First Sec. Bank of Livingston* (1988), 234 Mont. 166, 174, 762 P.2d 242, 247, *overruled on other grounds by Sacco v. High Country Indep. Press* (1995), 271 Mont. 209, 896 P.2d 411, appellants cited 37 Am. Jur. 2d *Fraud and Deceit* § 409, for the rule that "[w]here a confidential relationship exists between the parties, failure to discover facts constituting [a claim] may be excused" and the statute of limitations may be tolled. Although *Shiplet* involved an action against a bank for fraud, we conclude that the rule propounded in that case is equally applicable to legal malpractice claims. The United States Supreme Court noted long ago:

8

There are few of the business relations of life involving a higher trust and confidence than that of attorney and client . . . and it is the duty of the court . . . to be watchful and industrious, to see that confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party bestowing it.

*Stockton v. Ford* (1851), 52 U.S. 232, 247, 11 How. 232, 13 L.Ed. 676.

¶20    In the instant case, Carolyn did not discover Lacosta's negligence until 1995. Carolyn trusted Lacosta to draft an estate plan according to Carolyn's and Stanley's wishes. In fact, when Carolyn asked Lacosta whether the Trust was revocable as they had requested, Lacosta assured her that it was. Lacosta even advised Carolyn's insurance and financial advisor that the Trust was revocable.

¶21    As the Estate argues in its brief on appeal, Carolyn's mistake was in relying upon her attorney. However, that is not a mistake for which she should be punished. Carolyn was entitled to trust her attorney as her fiduciary. To hold otherwise would ignore the nature of the fiduciary relationship between attorney and client.

¶22    Second, Carolyn's failure to discover Lacosta's negligence may be excused because of the complexity of the legal transaction involved. In *Young v. Datsopoulos* (1991), 249 Mont. 466, 817 P.2d 225, we held that if a legal transaction is beyond the understanding of a layperson and the "date of discovery" is disputed, summary judgment is not appropriate. In *Young*, the decedent's family hired defendants to probate decedent's estate. The family claimed that defendants committed legal malpractice by misadvising the family concerning removal of a co-personal representative; the possible defense of lack of consideration to a claim against the estate on several promissory notes; and abandonment of several potential

9

lawsuits. *Young*, 249 Mont. at 469, 817 P.2d at 227. We reversed the trial court's grant of summary judgment reasoning that the legal transactions constituting the alleged malpractice were beyond the understanding of a layperson, therefore, when the facts should have been knowable was a question of fact precluding summary judgment. *Young*, 249 Mont. at 473, 817 P.2d at 229.

¶23 Here, the estate plan created by Lacosta created wills with pour-over provisions and several trusts. The complexity of this estate plan made it difficult even for experts to understand. Attorney Don Lee failed to understand the ramifications of the estate plan and had to call Lacosta for advice. Although attorney Neil McKay was ultimately able to comprehend the estate plan, he testified in his deposition that he spent numerous hours attempting to unravel and understand the plan. John Hagman, an insurance and financial advisor with substantial experience in estate planning, could not determine whether the Trust was an irrevocable QTIP trust. Given the inability of these professionals to understand the Estate plan, we conclude that the plan was clearly beyond Carolyn's understanding.

¶24 Third, Carolyn's failure to discover Lacosta's negligence may be excused if Lacosta concealed her mistakes. This Court has held that

> [t]he three-year statute of limitations for legal malpractice actions contains a built-in tolling mechanism for a defendant's fraudulent concealment of a plaintiff's injury. That is, a statute of limitations does not begin to run until the plaintiff discovers, or with reasonable diligence should have discovered, the act, error, or omission.

*Joyce v. Garnaas*, 1999 MT 170, ¶ 15, 295 Mont. 198, ¶ 15, 983 P.2d 369, ¶ 15. Thus, in the context of legal malpractice, a nexus exists between a defendant's fraudulent

10

concealment and the question of whether a plaintiff should have discovered the defendant's negligent act.

¶25    Although we have not yet ruled upon this issue, other courts have held that "mere failure to reveal information can be fraudulent concealment by a person, such as a fiduciary, who has a duty to disclose." *Geo. Knight & Co. v. Watson Wyatt & Co.* (1ˢᵗ Cir. 1999), 170 F.3d 210, 215 (citation omitted). Thus, "if a trust or confidential relationship exists between the parties, which imposes a duty to disclose, mere silence, by the one under that duty constitutes fraudulent concealment and thus tolls the applicable statute of limitations." *Greene v. Morgan, Theeler, Cogley & Petersen* (S.D. 1998), 575 N.W.2d 457, 462 (citations omitted).

¶26    This rule recognizes that a client's failure to discover an attorney's malpractice often results from "a second breach of duty by the fiduciary, namely, a failure to disclose material facts to his client." *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (Cal. 1971), 491 P.2d 421, 429. As the California Supreme Court noted in *Neel*, tolling the statute of limitations when the attorney remains silent "vindicates the fiduciary duty of full disclosure; it prevents the fiduciary from obtaining immunity for an initial breach of duty by a subsequent breach of the obligation of disclosure." *Neel*, 491 P.2d at 429.

¶27    In the instant case, Carolyn may have been damaged by two distinct acts of malpractice. First, if Lacosta failed to draft the estate plan according to Carolyn's and Stanley's wishes. And second, if Lacosta improperly executed Stanley's 1992 will and failed to inform Carolyn of that fact. Consequently, if Lacosta committed the underlying acts of

11

malpractice, and if in each instance, she actively concealed her malpractice, then that should not inure to her benefit. Nevertheless, these are exactly the type of factual questions appropriate for resolution by a trier of fact. *See Young*, 249 Mont. at 473, 817 P.2d at 229.

*Accrual Rule*

¶28 Section 27-2-102, MCA, provides in pertinent part:

> **When action commenced.** (1) For the purposes of statutes relating to the time within which an action must be commenced:
> (a) a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action;
> . . . .
> (2) Unless otherwise provided by statute, the period of limitation begins when the claim or cause of action accrues. Lack of knowledge of the claim or cause of action, or of its accrual, by the party to whom it has accrued does not postpone the beginning of the period of limitation.

¶29 We have held that this "accrual rule" applies to legal malpractice actions and that the statute of limitations does not begin to run until all elements of a claim, including damages, have occurred. *Uhler*, 268 Mont. at 195-200, 885 P.2d at 1300-03. More specifically, we stated that

> [i]n order to establish a cause of action for legal malpractice, there must be a showing that the attorney owed his client a duty of care, that there was a breach of this duty by a failure to use reasonable care and skill, *and that the breach was the proximate cause of the client's injury and resulted in damages.*

*Uhler*, 268 Mont. at 196, 885 P.2d at 1300 (citing *Merzlak v. Purcell* (1992), 252 Mont. 527, 529, 830 P.2d 1278, 1279-80) (emphasis added). In *Uhler*, we overruled our prior decision in *Boles v. Simonton* (1990), 242 Mont. 394, 791 P.2d 755, wherein we determined that the

12

statute of limitations precluded plaintiff's claims against their attorney even before they had sustained any actual damages as a result of the malpractice. *Uhler*, 268 Mont. at 199, 885 P.2d at 1302. We further stated in *Uhler* that it is inherently illogical and unfair to require a plaintiff to file an action prior to the accrual of the cause of action because if a plaintiff filed suit when no actual damages had been sustained, the suit would properly be dismissed. *Uhler*, 268 Mont. at 198, 885 P.2d at 1302. Moreover, the mere threat of future harm does not constitute actual damages. *Uhler*, 268 Mont. at 198-99, 885 P.2d at 1301-02.

¶30     In the instant case, the Trust was misleadingly titled "The Stanley L. and Carolyn M. Watkins Revocable Trust Agreement." Despite the title, the Trust became irrevocable upon the death of the first spouse. Thus, while the Trust became irrevocable upon Stanley's death in April 1992, Carolyn, relying upon Lacosta's advice, continued to transfer the Trust assets as if the Trust was revocable. Consequently, for several years following Stanley's death, Carolyn sustained no actual damages and she continued to treat the Trust assets as her own. In addition, when the irrevocable nature of the Trust was discovered by attorney Neil McKay in mid-1995, he contacted Lacosta who advised that the Trust could be revised with the beneficiaries' consent. Had this effort been successful, Carolyn would never have suffered the damages that formed the basis of the Beneficiary Suits. As it was, Carolyn did not sustain any actual damages until suit was brought to remove her as Trustee on May 30, 1996. Hence, the present action, filed on December 28, 1997, was well within the three-year statute of limitations set forth in § 27-2-206, MCA.

*Res Judicata and Collateral Estoppel*

13

¶31    Respondents also contend on appeal that this action is barred by the doctrines of *res judicata* and collateral estoppel.  Both of these doctrines are based on a judicial policy favoring a definite end to litigation.  *Kullick v. Skyline Homeowners Ass'n*, 2003 MT 137, ¶ 17, 316 Mont. 146, ¶ 17, 69 P.3d 225, ¶ 17 (citing *Rausch v. Hogan*, 2001 MT 123, ¶ 14, 305 Mont. 382, ¶ 14, 28 P.3d 460, ¶ 14).  *Res judicata* bars a party from relitigating a matter that the party has already had an opportunity to litigate.  *Kullick*, ¶ 17 (citing *Olson v. Daughenbaugh*, 2001 MT 284, ¶ 22, 307 Mont. 371, ¶ 22, 38 P.3d 154, ¶ 22).  Collateral estoppel is a form of *res judicata* and bars the reopening of an issue that has been litigated and resolved in a prior suit.  *Kullick*, ¶ 18 (citing *Finstad v. W.R. Grace & Co.*, 2000 MT 228, ¶ 28, 301 Mont. 240, ¶ 28, 8 P.3d 778, ¶ 28).

¶32    The doctrine of *res judicata* applies if the following four elements have been satisfied: (1) the parties or their privies are the same; (2) the subject matter of the present and past actions is the same; (3) the issues are the same and relate to the same subject matter; and (4) the capacities of the persons are the same in reference to the subject matter and to the issues between them.  *Kullick*, ¶ 17 (citing *Hall v. Heckerman*, 2000 MT 300, ¶ 13, 302 Mont. 345, ¶ 13, 15 P.3d 869, ¶ 13).  Here, the Beneficiary Suits were not malpractice actions and Lacosta was not a party to those claims.  Thus, *res judicata* is not applicable in this case.

¶33    The same is true as to the doctrine of collateral estoppel.  Collateral estoppel only applies if the following three elements have been satisfied:  (1) the identical issue raised was previously decided in a prior adjudication; (2) a final judgment on the merits was issued in

14

the prior adjudication; and (3) the party against whom the plea is now asserted was a party or in privity with a party to the prior adjudication. *Kullick*, ¶ 18.  This Court has recognized that parties who are drawn into litigation as a result of a professional's malpractice have a right to bring a subsequent and separate suit against the professional.  *See Fadness v. Cody* (1997), 287 Mont. 89, 951 P.2d 584 (sellers who were awarded damages against purchasers as a result of fraud in real estate action have a subsequent and separate action against real estate agent and closing agent for their breaches of duty).  The reason behind allowing a subsequent and separate action is that the later action raises different issues.

> Identity of issues is the most crucial element of collateral estoppel.  In order to satisfy this element, the identical issue or "precise question" must have been litigated in the prior action.
> . . . .
> . . . The fact that each action arises from the same transaction does not mean that each involve the same issues.

*Fadness*, 287 Mont. at 96-97, 951 P.2d at 588-89 (citations omitted).  We noted in *Fadness* that "[t]he duties owed by [the professionals] to the [plaintiff] were not decided, nor even considered by the jury in the first case." *Fadness*, 287 Mont. at 97, 951 P.2d at 589. Similarly, in the case *sub judice*, the duties owed by Lacosta to Carolyn and Stanley were not considered or decided in the prior Beneficiary Suits.  *See In the Matter of the Stanley L. and Carolyn M. Watkins Revocable Trust Agreement* (Toole County Cause No. DV 96-016); *In the Matter of the Estate of Stanley L. Watkins* (Toole County Cause No. 92-DP-020).

**Conclusion**

¶34    We hold that because Carolyn did not discover Lacosta's negligence until 1995, and because Carolyn did not sustain any actual damages until 1996, the present action, filed on December 28, 1997, was filed within the three-year statute of limitations for legal malpractice actions. In addition, we hold that the doctrines of *res judicata* and collateral estoppel are not applicable in this case because neither the parties nor the issues in this case are the same as in the Beneficiary Suits. Accordingly, we hold that the District Court erred in granting Respondents' motion for summary judgment.

¶35    Reversed and remanded for further proceedings consistent with this Opinion.


/S/ JAMES C. NELSON


We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER

Justice Jim Rice specially concurring.

¶36　　I concur in the holding of the Court, but not in the entirety of the rationale.

¶37　　Regarding damage, the Court holds that, although the Trust became irrevocable upon Stanley's death in April 1992, Carolyn sustained no actual damage therefrom because she continued to transfer assets as if the Trust was revocable. Further, the Court determines that if, following Carolyn's discovery that the Trust was irrevocable, her effort to modify the Trust by obtaining the beneficiaries' consent had been successful, she would never have suffered any damage. *See* ¶ 30. The Court then concludes that Carolyn did not sustain any damages until suit was brought to remove her as Trustee in May 1996. I disagree with these conclusions.

¶38　　Upon Stanley's death, Carolyn was subjected to an irrevocable trust (the portion of the Trust which was Stanley's individual trust) which was contrary to the express instructions given to Watkins' counsel. At that point, Carolyn had lost the ability to manage the entirety of the Watkins' affairs as she desired, a tangible loss. As the District Court noted: "What are the actual damages here? They're the inability of Mrs. Watkins to legally administer the trust in the manner which she wished." The fact that, notwithstanding the irrevocable nature of the Trust, Carolyn acted as if the Trust was revocable, did not eliminate her damages. To the contrary, these actions, taken in possible violation of the Trust, exposed her to potential liability for breach of trust or fiduciary duty, and, indeed, a petition alleging breach of her duties was later filed. Further, if the effort to modify the Trust by beneficiary

17

consent would have been successful, that effort would have mitigated Carolyn's damages, but would not have eliminated them altogether.

¶39 In *Anderson v. Glenn* (Idaho 2003), 87 P.3d 286, defendant attorney developed a trust for plaintiffs, who transferred property into the trust in 1980. In 1997, it was discovered that the trust was defective and did not accomplish the plaintiffs' purposes. Noting that the plaintiffs had given up substantial rights of control over the property in 1980, the Supreme Court of Idaho held that damage had been sustained by the plaintiffs at that time: "Damage occurred when the trust was created and control of the property surrendered to that trust." *Anderson*, 87 P.3d at 290.

¶40 I would conclude that Carolyn sustained damage in April of 1992, when Stanley died and Stanley's trust, containing substantial assets, became irrevocable. This would be consistent with *Uhler v. Doak* (1994), 268 Mont. 191, 885 P.2d 1297, wherein we held that the limitation period began to run when the plaintiff-client first acted to his detriment upon his counsel's advice–even though the plaintiff did not then realize he was acting to his detriment. However, notwithstanding this conclusion regarding damage, because I agree that knowledge of counsel's negligence should not be imputed to Carolyn prior to her actual knowledge thereof in April of 1995, I concur that the three-year limitation period began to run at that time, and that the complaint filed herein on December 28, 1997, was timely.


/S/ JIM RICE