JUSTICE RICE,
dissenting.
*526 ¶23 I believe the Court overlooks critical facts, ignores controlling cases, and essentially adopts the “continuous representation” doctrine we expressly rejected in earlier cases as inconsistent with our statute.
¶24 We reached the opposite conclusion from the Court’s holding today in the very similar case of Peschel v. Jones, 232 Mont. 516, 525-26, 760 P.2d 51, 56-57 (1988), and provided specific guidance about application of the discovery rule. There, the lawyer drafted an agreement for the purpose of resolving financing problems so that construction of the client’s apartment complex could continue. Peschel, 232 Mont. at 518, 760 P.2d at 52. The agreement was entered in November 1979 and construction resumed in December 1979. Peschel, 232 Mont. at 518, 760 P.2d at 52. Ultimately, the agreement did not resolve matters and litigation between the client and the other contract party ensued. Peschel, 232 Mont. at 518, 525, 760 P.2d at 52, 56. The other party obtained a $72,000 judgment against the client, Peschel, in January 1984. Peschel, 232 Mont. at 525, 760 P.2d at 56. Peschel then filed sui1 against his former attorney, Jones, in November 1985. Peschel, 232 Mont. at 518, 760 P.2d at 52. Peschel argued-^ust as Ehrman argues-that 'he did not discover the facts essential to a cause of action until after January 25, 1984, when a district court decision founc judgment for Martin Development and against Peschel in the amoun of $72,000.” Peschel, 232 Mont. at 525, 760 P.2d at 56.
¶25 We rejected Peschel’s argument. Noting Peschel’s assertion tha ‘he had knowledge of the acts, but did not have knowledge of th< alleged negligence,” Peschel, 232 Mont. at 525, 760 P.2d at 56, w explained that it was knowledge of the facts which was critical-no-knowledge of a viable malpractice theory:
As a matter of law, what is critical in determining when a leg; malpractice action accrues is knowledge of the facts essential to th\ cause of action, not knowledge of the legal theories upon which a: action may be brought.
[I]t is the knowledge of facts rather than discovery of legal theory that is the test. The test is whether the plaintiff has information < circumstances sufficient to put a reasonable person on inquiry, < has the opportunity to obtain knowledge from sources open to hj or her investigation.
Peschel, 232 Mont. at 525, 760 P.2d at 56 (emphases added, intern! quotation marks omitted) (quoting Burgett v. Flaherty, 204 Mont. 16 173-74, 663 P.2d 332, 334 (1983)). Thus, the “test” for determinir whether the plaintiff-client “should have discovered” the problem : *527 “whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry.” Peschel, 232 Mont. at 525, 760 P.2d at 56.
¶26 In Guest v. McLaverty, 2006 MT 150, ¶¶ 5, 13, 332 Mont. 421, 138 P.3d 812, we held that plaintiffs legal malpractice claim was time barred, and consistently applied the rules discussed in Peschel:
One has discovered, or through the use of reasonable diligence should have discovered, the act, error, or omission, when one has information of circumstances sufficient to put a reasonable person on inquiry regarding the act or omission. Johnson v. Barrett, 1999 MT 176, ¶ 11, 295 Mont. 254, ¶ 11, 983 P.2d 925, ¶ 11. This test requires knowledge of the facts essential to the legal malpractice claim, rather than the discovery of legal theories. Johnson, ¶ 11. Specifically, the court determines whether the plaintiff had “the opportunity to obtain knowledge from sources open to his or her investigation at that time or shortly thereafter[.]” Johnson, ¶ 15 (internal quotation omitted).
Guest, ¶ 5 (emphasis added). As in Peschel, we rejected Guest’s argument that he Tacked the legal expertise to know he may have had a malpractice claim” any earlier, noting that this was Irrelevant” to the proper analysis. Guest, ¶ 8 (citing Johnson, ¶ 11). We stated that ‘Guest’s contention that the statute of limitations cannot begin to run until he ‘realized the acts and omissions complained of constituted legal malpractice!,]’ is incorrect.” Guest, ¶ 8. Likewise, the Court’s conclusion here that ‘Ehrman did not know, nor should he have known, of KVHR’s alleged negligent act until August 2007” is clearly incorrect. Opinion, ¶ 18. In August 2007 Ehrman learned that he had lost before the district court and that his attorney may have committed malpractice; but long before August 2007 he clearly knew of the facts-of the actions taken by bis attorney. The Court’s reasoning implies that until August 2007, when the District Court ruled, the facts putting Ehrman on inquiry could not have been known.
¶27 The precise issue under our law is when Ehrman had ‘information [of circumstances sufficient to put a reasonable person on inquiry” [concerning his attorney’s advice, not when he became aware that he bad a viable malpractice claim. Guest, ¶ 5; Peschel, 232 Mont. at 525, 760 P.2d at 56. Ehrman had more than enough information to put a reasonable person on inquiry about his attorney’s actions long before ■August 2007-he had it more than 3 years before his filed suit against KVHR. The Court overlooks many of these critical facts in its analysis.
*528 ¶28 KVHR prepared the lease agreement for Ehrman which was signed in June 2002. Over three years lapsed before Ehrman again sought counsel from KVHR, during which time KVHR heard nothing about the situation and took no action. However, much happened with Ehrman during this hiatus. As the Court notes, in late 2003 or early 2004, new owner Myers told Ehrman he would never consent to assignment of the dock rights to Ehrman and began to harass Ehrman and his guests when they used the dock. At that point, in July 2004, over two years after KVHR’s latest involvement, Ehrman took action for himself by recording his lease agreement, a fact the Court ignores. Ehrman acknowledges that he was aware by this time that Myers was never going to provide consent. And then, as Ehrman testified in his deposition, ‘things got crazy”:
A. ...When [Myers] found out I got it recorded, then things got crazy. Then he was harassing us. He was taking pictures of-Every time we’d take the boat out he was there with his camera taking pictures and making threats and all kinds of things. He was really hot and mad, but that didn’t happen until about the time I recorded the [lease agreement].
Q. Do you have knowledge that Mr. Myers became aware of your recording and that’s what triggered his hostility?
A. Yes.
Q. Did he tell you that?
A. Yes.
¶29 The events over these years would have put a reasonable person “on inquiry” that there was a problem with the lease agreement-especially after ‘things got crazy.”The lease was premised upon obtaining Myers’ consent and, clearly, that was not going ti happen. Myers said he would never consent to lease of the dock right; to Ehrman and actively opposed Ehrman’s use of the doc' Significantly, all of this occurred during the three years that KVH was not involved in the matter. The Court reasons that “[i]n the mids of representation, a client should not be required to sue his or he: attorney for malpractice merely because the opposing party ha; presented countervailing arguments.” Opinion, ¶ 17. However, thii] matter was not in litigation when ‘things got crazy,” and KVHR wai not then actively representing Ehrman. Ehrman, who was handlin; things for himself, including recording the lease, then faced a decisio: with litigation appearing to be necessary, should he go back after three-year hiatus to KVHR, who had written the apparentlj unworkable lease, or should he seek other counsel? Despite being p *529 “on inquiry” about a problem, Ehrman returned to KVHR without seeking another opinion.
¶30 The Court relies heavily upon Estate of Watkins v. Hedman, Hileman, & Lacosta, 2004 MT 143, 321 Mont. 419, 91 P.3d 1264, but that case is clearly distinguishable from the circumstances here, as we have previously explained. See Guest, ¶ 9 (citing Watkins Trust v. Lacosta, 2004 MT 144, ¶¶ 12, 43, 321 Mont. 432, 92 P.3d 620).[1] We rejected Guest’s reliance on Watkins Trust because the 'highly complex” estate and tax planning issues at issue in Watkins Trust would have been “ ‘very difficult for the average layperson to understand.’ ” Guest, ¶ 9 (quoting Watkins Trust, ¶¶ 12, 43); see also Estate of Watkins, ¶¶ 9, 22-23. Further, we acknowledged the role of concealment in the Watkins cases. Watkins Trust, ¶¶ 44-47; Estate of Watkins, ¶¶ 24-27. Such concealment has not been alleged here, importantly, in Guest we emphasized that, even under Watkins Trust, “the analysis still focuses on ‘when the facts should have been mowable[;]’ not when the trustee should have known that a potential malpractice claim existed.” Guest, ¶ 9 (quoting Watkins Trust, ¶ 41). The subject matter here was not so complex that Ehrman could not see ;hat there was a problem with the lease, as the facts clearly showed.
¶31 In Schneider v. Leaphart, 228 Mont. 483, 484-85, 743 P.2d 613, 14 (1987), the lawyer drafted an agreement which was entered in Siovember of1979 and the client learned, at least by December of 1981, ;hat the agreement was apparently in error. Litigation with the other :ontract party ensued, wherein the client was presumably represented y the same lawyer who drafted the agreement. Schneider, 228 Mont. at 485, 488, 743 P.2d at 615-16. The court ruled against the client, who ,hen brought a malpractice action against the lawyer in March 1985, ore than three years after learning of the problem with the greement. Schneider, 228 Mont. at 485-86, 743 P.2d at 615. The istrict court dismissed the action pursuant to the three-year statute jf limitations. Schneider, 228 Mont. at 486, 743 P.2d at 615. On appeal, client, Schneider, urged this Court to adopt the “continuous spresentation” doctrine for legal malpractice claims, so that the tatute of limitations would be “tolled until such time as an attorney *530 ceases to represent a plaintiff.” Schneider, 228 Mont. at 488, 743 P.2d at 616.
¶32 We rejected Schneider’s argument, concluding that the continuous representation doctrine was inconsistent with § 27-2-206, MCA, the statute of limitations for legal malpractice actions, and our previous holdings: “[T]his Court has noted that ‘[sjection 27-2-206, MCA does not suspend accrual until the ‘attorney-client’ relationship has beer terminated.’ ” Schneider, 228 Mont. at 488, 743 P.2d at 616-17 (quoting Burgett, 204 Mont. at 174, 663 P.2d at 334).
¶33 However, the Court today essentially overturns these cases and adopts the continuous representation doctrine-but without explicitly saying so. The Court tolls the statute of limitations on the basis tha1 ‘Ehrman testified he wholly relied on”his attorney’s advice. Opinion, ¶ 18. If all a client must do is assert that he “wholly relied” upon his attorney’s advice in order to toll the statute of limitations, such a lov threshold will result in tolling the statute for every claim, despite th< Court’s assertion that the client’s right to rely upon the attorney’ advice is “not absolute.” Opinion, ¶ 17. For all practical purposes, this holding indeed makes the right absolute and adopts the continuoui representation doctrine. Despite stating that this issue will be decide* on a ‘fact-intensive inquiry particular to each case,” Opinion, ¶ 17, tha Court ignores all the facts about Ehrman’s actions and knowledge ani simply accepts his statement that he “wholly relied on”his attorney’* advice. Opinion, ¶ 18. I
¶34 We adopted the ‘two-track” approach for criminal defendants ill Ereth v. Cascade County, 2003 MT 328, ¶ 26, 318 Mont. 355, 81 P.3 463. We concluded this approach was superior “because it incorporate! a strict reading of the statute of limitations that at the same tim! addresses the problems posed by multiple litigations.” Ereth, ¶ 26. WH said that ‘in order to put counsel on notice that he or she will have t! defend against a malpractice claim, and thereby honor the policiJj underlying the statute of limitations, we hold that a criminal defendant must file a malpractice complaint within three years m discovering the act, error or omission.” Ereth, ¶ 26. The policy reasoiH supporting adoption of the two-track rule in Ereth support the sarrH application of our law here. Further, affirming the District CouB honors §27-2-206, MCA. H
¶35 Lastly, I concur with KVHR’s argument regarding the accruH rule. Ehrman lost the quiet enjoyment of his asserted use privilegH and was thus damaged long before the district court ruled against hiH in August 2007. The trouble he suffered motivated him to record tfl *531 lease agreement in July 2004, in an effort to bolster his claim to the dock. From 2004 to 2007 he did not enjoy peaceable use of the dock. The rights he thought he had obtained under the lease were clearly threatened, and he was damaged at that time.
¶36 The Court has failed to honor our precedent by issuing a decision which is inconsistent with cases such as Peschel, Guest, Leaphart, and Burgett. I believe this decision will cloud this area of the law. I would affirm.
JUSTICE COTTER joins the dissenting Opinion of JUSTICE RICE.

 Estate of Watkins and Watkins Trust arose from the same factual scenario, both lleging legal malpractice, but were brought separately due to conflicting expectations leated by the alleged malpractice. Watkins Trust, ¶ 14. In both Watkins cases we Iversed the district courts’ holdings that the actions were time barred. Watkins Trust, T 53-54; Estate of Watkins, ¶¶ 34-35.