No. 02-197

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 54

EUGENE E. SPOLAR,

      Plaintiff and Appellant,

    v.

MILTON DATSOPOULOS and DATSOPOULOS,
MacDONALD, & LIND, P.C.,

      Defendants and Respondents.

APPEAL FROM:   District Court of the Second Judicial District,
In and For the County of Silver Bow, Cause No. DV-99-248
Honorable John W. Whelan, Presiding

COUNSEL OF RECORD:

      For Appellant:

      James M. Kommers, Kommers & Bentson, PLLP, Bozeman, Montana

      For Respondents:

      Dexter L. Delaney and Brian L. Delaney, Delaney & Delaney,
Missoula, Montana

Submitted on Briefs:  July 11, 2002

Decided:   March 25, 2003

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Eugene Spolar appeals from the judgment of the Second Judicial District Court, dismissing his legal malpractice claim as barred by the statute of limitations. We affirm.

¶2 The following issue is raised on appeal:

¶3 Whether the District Court erred in ruling that Spolar's legal malpractice claim was barred by the statute of limitations, § 27-2-206, MCA.

## PROCEDURAL BACKGROUND

¶4 Spolar brought a legal malpractice action against the Defendants and Respondents, Milton Datsopoulos and Datsopoulos, MacDonald & Lind, P.C., alleging that Datsopoulos was professionally negligent and had breached an implied contract while representing Spolar in the division of his marital estate. According to Spolar, Datsopoulos had failed to fully and fairly ascertain the actual value of the estate, and that, because of this error, the division of the assets benefitted Spolar's wife.

¶5 Spolar and his wife divorced in 1987, but elected to keep their marital estate intact, holding their assets in partnership until 1995 when they decided to divide the estate. At that time Spolar was serving a five-year prison term in connection with a 1993 federal drug trafficking conviction. Datsopoulos had represented Spolar in the criminal case and agreed to continue representing Spolar in the asset division proceedings. During Spolar's incarceration, he and Datsopoulos communicated about the case by telephone and written correspondence. According to Datsopoulos, they discussed, at length, the value of the marital estate to be divided, and specifically the development of Spolar's asset list which

2

Datsopoulos would later submit to Judge Purcell in the form of proposed findings of fact and conclusions of law. In creating this asset list, Datsopoulos used a valuation method that he claims Spolar had authorized and which included appraisals prepared by Spolar's accountant, Boyd Taylor.

¶6      Judge Purcell set a hearing in the matter for October 16, 1995. Before the hearing, Datsopoulos submitted proposed findings of fact and conclusions of law to the court, and forwarded a copy to Spolar, who later acknowledged receiving both that document and a subsequent memorandum, also prepared by Datsopoulos, which included a description of Spolar's real property. Although it appears that Spolar originally approved Datsopoulos' valuation method, he began to complain about its reliability sometime before the hearing. Depositions of Spolar and his Idaho attorney, Lance Nalder, indicate that Spolar voiced objections to the valuation method as early as October 1995, when Spolar was incarcerated in a federal prison in Safford, Arizona. On December 9, 1996, a year after the hearing, Judge Purcell entered his Findings of Fact, Conclusions of Law and Order, dividing Spolar's marital estate. According to Judge Purcell, the proposed findings of fact and conclusions of law submitted by Datsopoulos and Spolar's wife indicated that both parties had agreed on the value of the property.

¶7      Spolar received a copy of the order on December 23, one day before his release from prison. He brought this action against Datsopoulos on December 17, 1999. Datsopoulos moved for summary judgment and, on January 24, 2002, the Second Judicial District Court

3

granted the motion, dismissing Spolar's claim as barred by the statute of limitations. Spolar then appealed.

DISCUSSION

¶8 The determinative issue of this appeal is whether the District Court erred in ruling that Spolar's cause of action against Datsopoulos was barred by the statute of limitations, § 27-2-206, MCA. Spolar argues that the statute of limitations began to run on December 23, 1996, when he received the Findings of Fact, Conclusions of Law and Order issued by Judge Purcell. Specifically, Spolar contends that even if the cause of action accrued when the Judge entered his findings of fact and conclusions of law on December 9, 1996, the statute of limitations was tolled until December 23, when he received a copy of the Judge's order. According to Spolar, a party is not charged with actual knowledge of a court order until he or she receives a copy of the ruling. On this basis, Spolar concludes that he did not receive actual knowledge of any damages sustained as a result of the order until December 23.

¶9 In response, Datsopoulos argues that Spolar's cause of action accrued on October 16, 1995, the hearing date in Spolar's asset division proceedings. According to Datsopoulos, a cause of action for legal malpractice accrues when the plaintiff has knowledge of the facts essential to a claim. Datsopoulos maintains that Spolar's cause of action accrued when he became aware of, and began objecting to, the valuation method used for purposes of preparing the proposed findings of fact and conclusions of law. Thus, Datsopoulos contends that Spolar's cause of action accrued in October 1995, more than four years before Spolar filed his legal malpractice suit. Alternatively, Datsopoulos argues that, at the very latest,

4

Spolar's claim accrued when Judge Purcell entered his Findings of Fact, Conclusions of Law and Order on December 9, 1996. Datsopoulos notes that, even with this accrual date, Spolar's legal malpractice suit, which was filed on December 17, 1999, exceeds the three-year statute of limitations period by eight days.

¶10 In granting Datsopoulos' motion for summary judgment, the District Court concluded that the statute of limitations in Spolar's legal malpractice suit began to run when Judge Purcell entered his findings of fact and conclusions of law, and that by December 17, 1999, the date on which Spolar filed the suit, the statute of limitations had expired. The District Court identified December 9, 1996, as the accrual date for Spolar's cause of action because Spolar "discovered or should have, through reasonable diligence, discovered Datsopoulos' alleged act, error or omission . . ." on that date. (Citations omitted.)

¶11 Our standard of review in appeals from summary judgment rulings is de novo; and we follow the same criteria applied by the District Court pursuant to Rule 56, M.R.Civ.P. The moving party must establish both the absence of genuine issues of material fact as well as entitlement to judgment as a matter of law. Once this has been accomplished, the burden shifts to the opposing party to prove, by more than mere denial and speculation, that a genuine issue does exist. *Stockman Bank of Montana v. Potts*, 2002 MT 178, ¶ 3, 311 Mont. 12, ¶ 3, 52 P.3d 920, ¶ 3.

¶12 Section 27-2-206, MCA, provides that an action against an attorney for legal malpractice must be commenced within three years after the "plaintiff discovers or through the use of reasonable diligence should have discovered the act, error, or omission, whichever

5

occurs last . . . ." Under § 27-2-102(1)(a), MCA, "[a] claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action."

¶13    We have discussed, in some detail, the appropriate standard for determining when a cause of action for legal malpractice accrues and when the statute of limitations begins to run. In *Johnson v. Barrett*, 1999 MT 594, ¶ 11, 295 Mont. 254, ¶ 11, 983 P.2d 925, ¶ 11 (citing *Peschel v. Jones* (1988), 232 Mont. 516, 525, 760 P.2d 51, 56), we noted that "[w]hen the statute of limitations issue involves the time at which the plaintiff, through the use of reasonable diligence, should have discovered the facts, '[t]he test is whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his or her investigation'." The plaintiff, in *Johnson*, argued that he did not discover the facts underlying his claim for malpractice against his attorney until he received a transcript of the hearing in which his attorney allegedly submitted improper jury instructions to the trial court. *Johnson*, ¶ 13. Applying § 27-2-206, MCA, we rejected this argument and concluded that the plaintiff's legal malpractice suit accrued when the attorney discussed the instructions with the plaintiff before submitting the instructions to the trial court. *Johnson*, ¶¶ 14-16.

¶14    In *Schneider v. Leaphart* (1987), 228 Mont. 483, 743 P.2d 613, and *Uhler v. Doak* (1994), 268 Mont. 191, 885 P.2d 1297, we addressed, specifically, the theory, now offered by Spolar, that the statute of limitations does not begin to run until the plaintiff learns of his

6

or her damages.  In *Schneider*, the plaintiff argued that a cause of action against his attorney, for legal malpractice, did not accrue until he allegedly discovered that a property settlement agreement with his wife, which was drafted by the attorney and entered as part of a dissolution decree, provided for payment of maintenance over a period of time which was longer than necessary.  *Schneider*, 228 Mont. at 486-87, 743 P.2d at 616.  The plaintiff identified this discovery of the alleged error as the appropriate starting point for the limitations period, asserting that only then did he have knowledge of all the elements of a claim for legal malpractice against the attorney.  *Schneider*, 228 Mont. at 486-87, 743 P.2d at 616.  We noted that although this "damage rule" had been recognized by other states, the plaintiff's application of the rule failed for two reasons.  *Schneider*, 228 Mont. at 487, 743 P.2d at 616.  First, the requirement that a legal malpractice statute of limitations will be tolled until a party discovers his or her damages is absent from the Montana code.  *Schneider*, 228 Mont. at 487, 743 P.2d at 616.  Second, the issuance of the dissolution decree by the trial court effectively charged the plaintiff with, at least, constructive notice of what was contained in the settlement agreement with his wife, including the nature of the maintenance payments and the effect of that obligation on his property.  *Schneider*, 228 Mont. at 487, 743 P.2d at 616.  In short, we concluded that the plaintiff's damages, if any, were sustained when the trial court entered the dissolution decree, and that the statute of limitations began to run on that date.

¶15    In *Uhler*, we affirmed this rejection of the "damage rule."  The plaintiff, in that case, had signed a resignation letter and termination agreement on the advice of his attorney.

7

*Uhler*, 268 Mont. at 196, 885 P.2d at 1300. Under the termination agreement, the plaintiff waived his right to receive bonuses and to exercise an option to repurchase stock. As a result, the plaintiff was exposed to substantial monetary loss and, accordingly, he filed a complaint against the attorney, alleging legal malpractice. *Uhler*, 268 Mont. at 196, 885 P.2d at 1300. In response to the attorney's contention that the statute of limitations for the action had expired, the plaintiff argued that the limitation period was tolled until he discovered his damages when the termination agreement was executed. *Uhler*, 268 Mont. at 196, 885 P.2d at 1300. The trial court rejected this theory, stating that the discovery of damages is not a prerequisite to the running of the statute of limitations. *Uhler*, 268 Mont. at 195, 885 P.2d at 1299-1300. Although we reversed the trial court on other grounds, we upheld this specific determination and affirmed the language of *Schneider* that the "damage rule" is not the recognized standard in Montana. *Uhler*, 268 Mont. at 197, 885 P.2d at 1301.

¶16     Taken together, *Johnson*, *Schneider*, and *Uhler* provide a road map, of sorts, for our analysis in the present case. Spolar's cause of action against Datsopoulos accrued when Judge Purcell issued his findings of fact and conclusions of law on December 9, 1996. On that date, Spolar's damages occurred and all the elements of his claim against Datsopoulos existed. Accordingly, with December 9, 1996 as a starting point, the three-year statute of limitations expired on December 9, 1999, eight days before Spolar filed his Complaint.

¶17     We reject Spolar's contention that the statute of limitations started to run on December 23, 1996, under the "damage rule." Like the plaintiff in *Johnson*, Spolar urges that even if his cause of action accrued on December 9, 1996, the statute of limitations was

8

tolled until he learned of Judge Purcell's findings of fact and conclusions of law when he received a copy on December 23. We have twice declined to recognize this argument, stating in *Schneider* and *Uhler* that under Montana's codified statute of limitations for legal malpractice actions, the time for filing is not tolled by a plaintiff's failure to discover damages. In light of these prior rulings, Spolar's urging of a "damage rule" is unpersuasive.

CONCLUSION

¶18   Because the statute of limitations for Spolar's cause of action began running on December 9, 1996, his complaint, which was filed on December 17, 1999, was beyond the three-year limitations period. Therefore, we hold that the District Court did not err in granting Datsopoulos' motion for summary judgment.


/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER
/S/ JIM RICE