JUSTICE WHEAT
delivered the Opinion of the Court.
¶1 The Eleventh Judicial District Court, Flathead County, granted summary judgment to Kaufman, Vidal, Hileman & Ramlow, P.C (‘KVHR”), concluding that Robert Ehrman’s (Ehrman) legal malpractice claim against KVHR was barred by the three year statute of limitations.
¶2 We reverse and remand for further proceedings consistent witl this Opinion.
BACKGROUND
¶3 In January 2002, Ehrman sought legal advice from KVH regarding whether he could acquire William L. Baillie’s (Baillie) bo dock rights located on Bigfork Harbor on Flathead Lake. The questioi] Ehrman presented to KVHR was one of contract interpretation. I: 1991, Baillie had reserved the dock rights in a Contract for Deed whe: he sold the property where the dock was located. The Contract fo| Deed reserved use of the dock and access to it to Baillie and his heirs The Contract for Deed also provided that, subject to the terms of th| agreement, either party could assign his or her interest and neith party could unreasonably withhold consent to such assignment.
¶4 Ehrman was not Baillie’s heir and was specifically concerned wi whether he could acquire Baillie’s dock rights under the Contract fd Deed. James Ramlow (Ramlow), a KVHR attorney, advised Ehrma *521 that he could acquire the dock rights, despite his non-heir status, and drafted a ‘Lease and Agreement for Assignment of Easement to Boat Dock” (“Agreement”). Under the Agreement, Ehrman would lease Baillie’s dock rights until Baillie obtained consent to assign, upon which Ehrman would acquire the dock rights. Ehrman and Baillie executed the Agreement in June 2002.
¶5 Over the next one and a half years, Ehrman made lease payments and enjoyed use of the dock without incident. However, in late 2003 or early 2004, William G. Myers, Jr. (Myers), a subsequent purchaser of the property, informed Ehrman that he would never consent to assignment of the dock rights. His actions prompted Ehrman to record the Agreement in July 2004. Myers proceeded to harass Ehrman whenever he or his guests used the dock.
¶6 In July 2005, Myers’ attorney contacted Ramlow and arranged a meeting. After the meeting, Ramlow wrote to Ehrman, informing him that Myers disputed Baillie’s ability to transfer his dock rights to anyone other than one of his heirs, but that Myers was willing to enter into a new lease agreement with Ehrman. In a subsequent letter to Ehrman, dated September 6, 2005, Ramlow advised Ehrman of his options:
Your options are to do nothing and defend your right to the lease and assignment of dock and access rights. That may be costly .... In my experience, it would not be safe to advise you to plan on spending any less than 10,000 to 15,000 for litigation costs. If you win, which I think you will, an appeal by Myers to the Supreme Court could cost an additional 4,000 to 5,000. Another option is to attempt to negotiate a new lease with Myers .... Before negotiating, I think that some letter should be sent to his attorney challenging Myers’ refusal to give consent to the lease and assignment.
(Emphasis added.) Ehrman elected to defend the Agreement.
¶7 In 2006, Myers and other owners of the property sued Ehrman, seeking a declaratory judgment that Ehrman had no interest in the dock rights. Both parties filed motions for summary judgment. In August 2007, the district court ruled against Ehrman, concluding that the dock rights were only reserved to Baillie and his heirs, and it was not unreasonable, as a matter of law, for the property owners to refuse [to consent to the assignment of the dock rights to a non-heir.
!¶8 KVHR subsequently withdrew from representing Ehrman. [Ehrman hired his current counsel and chose not to appeal the declaratory judgment. Instead, Ehrman sued KVHR for legal *522 malpractice in April 2008. In March 2010, the District Court granted KVHR’s motion for summary judgment, concluding the lawsuit was barred by the applicable three year statute of limitations. Consequently, the lawsuit was dismissed with prejudice.
¶9 The sole issue on appeal is whether the District Court erred in determining that Ehrman’s legal malpractice claim was barred by the three year statute of limitations.
STANDARD OF REVIEW
¶10 We review a district court’s summary judgment ruling de novo, applying the same M. R. Civ. P. 56 criteria used by the district court. Watkins Trust v. Lacosta, 2004 MT 144, ¶ 16, 321 Mont. 432, 92 P.3d 620. Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c). Once the moving party accomplishes I this, the burden shifts to the opposing party to prove, by more than mere denial and speculation, that a genuine issue of material fact exists and that the moving party is not entitled to judgment as a matter of law. Spolar v. Datsopoulos, 2003 MT 54, ¶ 11, 314 Mont. 364, 66 P.3d 284.
DISCUSSION
¶11 Section 27-2-206, MCA, provides the statute of limitations for a legal malpractice action:
An action against an attorney licensed to practice law in Montana or a paralegal assistant or a legal intern employed by an attorney) based upon the person’s alleged professional negligent act or fo: error or omission in the person’s practice must be commence within 3 years after the plaintiff discovers or through the use o: reasonable diligence should have discovered the act, error, o: omission, whichever occurs last, but in no case may the action b commenced after 10 years from the date of the act, error, o: omission.
¶12 Further, we have held that the statute of limitations does na begin to run until both the “discovery rule” and “accrual rule” are satisfied. Watkins Trust, ¶ 40. The discovery rule begins the statute o: limitations when the plaintiff discovers or should have discovered tin negligent act. Johnson v. Barrett, 1999 MT 176, ¶ 11, 295 Mont. 254 983 P.2d 925. The statute of limitations does not begin to run unde: the accrual rule until all elements of the claim have occurred. Uhler Doak, 268 Mont. 191, 196, 885 P.2d 1297, 1300 (1994). Thus, “th( *523 statute of limitations in a legal malpractice action does not begin to run until the negligent act was, or should have been, discovered, and all elements of the legal malpractice claim, including damages, have occurred.” Watkins Trust, ¶ 40.
¶13 The District Court determined Ehrman was aware of the facts forming the basis of the malpractice allegation no later than July 2004 because he knew a problem existed with the Agreement (Myers and the other property owners were not going to consent to the assignment of the dock rights); therefore, the statute of limitations had already run when he filed suit in 2008.
¶14 On appeal, Ehrman argues that the statute of limitations did not begin to run until August 2007 when the district court granted summary judgment to Myers and the other property owners. Ehrman asserts the discovery rule does not bar his claim because he justifiably relied on his attorney’s advice, and the attorney-client fiduciary relationship excuses earlier discovery of the negligent act. He also argues his claim is not barred by the accrual rule because he did not suffer any actual injury until August 2007. KVHR maintains that by July 2004, Ehrman was aware of facts sufficient to put him on inquiry notice of a potential claim. KVHR further argues that Ehrman accrued damages-denial of quiet enjoyment of his dock rights-in 2004, when Myers began harassing Ehrman and his guests.

A. Discovery Rule

15 The existence of a fiduciary relationship, such as that of attorney nd client, may excuse the discovery of an attorney’s alleged negligent ct and toll the statute of limitations. Estate of Watkins v. Hedman, 2004 MT 143, ¶¶ 18-21, 321 Mont. 419, 91 P.3d 1264. In Estate of 'atkins, Carolyn Watkins retained attorney Lacosta to prepare an state plan for Carolyn and her husband Stanley. As part of the estate Ian, Lacosta prepared a trust that she advised Carolyn was revocable [pursuant to Carolyn’s wishes that she retain flexibility in managing ssets) when, in fact, it became irrevocable upon Stanley’s death in 992. Lacosta continued to advise Carolyn the trust was revocable ntil 1995, when Carolyn was advised by another attorney that it was revocable, and Lacosta admitted it was irrevocable. Id. at ¶¶ 4-9.
16 Given the confidential relationship that existed between Carolyn d Lacosta, we excused her delayed discovery of the negligent act and included the statute of limitations was tolled until 1995 when arolyn discovered the trust was irrevocable. Id. at ¶ 34. We noted at Carolyn’s mistake was her reliance on Lacosta’s advice. However, e was entitled to trust her attorney’s advice. Id. at ¶ 21. In reaching *524 our conclusion, we noted what the United States Supreme Court observed long ago:
There are few of the business relations of life involving a higher trust and confidence than that of attorney and client... and it is the duty of the court... to be watchful and industrious, to see that confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party bestowing it.
Id. at ¶ 19 (quoting Stockton v. Ford, 52 U.S. 232, 247, _ S. Ct. _ (1851)).
¶17 Lawsuits are based upon different interpretations of law and fact, and a client is entitled to rely on the advice of his or his attorney. In the midst of representation, a client should not be required to sue his or her attorney for malpractice merely because the opposing party has presented countervailing arguments. However, a client’s right to rely on his or her attorney’s advice is not absolute, and delayec discovery is only excused until the client reasonably believes that he or she is no longer being competently represented. See id. at ¶¶ 18-21 Thus, there is not an absolute rule for determining when the discovery rule is triggered. The determination of when a client knew or shoulc have known that his or her attorney’s advice was negligent is a fact intensive inquiry particular to each case.
¶18 Turning to the facts of this particular case, we conclude Ehrmai did not know, nor should he have known, of KVHR’s alleged negligen act until August 2007. Ehrman testified he wholly relied on Ramlow’ advice throughout the course of his representation:
All I ever did was listen to my attorneys.... I’m smart enough know I don’t know the law, so I get the best counsel I can an! listen to what they have to say.
There was never any question in my mind until the day that ’ lost the summary judgment that we weren’t going to win thi| thing. I was assured by them that [Myers and the other proper owners] just hadn’t read far enough. ... When I’d call and talk \ [Ramlow], he’d say, No. Don’t worry about it.
¶19 Here, Myers’ countervailing interpretation of the underlyinl Contract for Deed and challenges to the Agreement were insufiicieif to put Ehrman on notice of an alleged negligent act and trigger tl discovery rule. It was reasonable for Ehrman to rely upon Ramios advice until summary judgment was entered against him in Augul 2007. At that time, he was clearly on notice that the advice he hq received was incorrect and the Agreement was void.

*525
B. Accrual Rule

¶20 In TJhler, we held that all elements of a claim must have accrued in order for the statute of limitations to begin running:
[T]o establish a cause of action for legal malpractice, there must be a showing that the attorney owed his client a duty of care, that there was a breach of this duty by a failure to use reasonable care and skill, and that the breach was the proximate cause of the client’s injury and resulted in damages.
268 Mont. at 196, 885 P.2d at 1300 (quoting Merzlak v. Purcell, 252 Mont. 527, 529-30, 830 P.2d 1278, 1279-80 (1992)) (emphasis added). The accrual rule is based on the rationale that It is inherently illogical and unfair to require a plaintiff to file an action prior to the accrual of the cause of action because if a plaintiff filed suit when no actual damages had been sustained, the suit would properly be dismissed.” Watkins Trust, ¶ 49. Further, actual damages, not the mere threat of future damages, are required to begin the running of the statute of limitations under the accrual rule. Id. Additionally, in Spolar, we determined that although the client had been voicing his objections for over one year to the valuation method his attorney used in preparing proposed findings of fact and conclusions of law for the division of the client’s marital estate, his claim did not accrue until the district court issued its order dividing the marital estate. Spolar, ¶¶ 5-7, 16.
¶21 Similarly in this case, Ehrman’s damages did not accrue until the district court declared the Agreement null and void, enjoined Ehrman from using the dock, and quieted title in favor of Myers and other property owners. If, as the District Court concluded, rman’s damages had accrued in July 2004, he would have had to sue malpractice when he still had possession of and was using the dock hts-before he sustained any damages arising from Ramlow’s erpretation of the Contract for Deed. Because the matter in dispute s related to the interpretation of a contract, and because Ehrman s not deprived of the possession or use of the dock rights until gust 2007, we conclude his claim against KVHR did not accrue until it point.
CONCLUSION
2 Reversed and remanded for further proceedings consistent with s Opinion.
CHIEF JUSTICE McGRATH, JUSTICES NELSON, LEAPHART i MORRIS concur.