JUSTICE BAKER,
concurring.
¶80 I concur in the decision to reverse summary judgment in favor of ARCO on the Plaintiffs’ continuing tort claims. I agree that evidence of migration is not necessary to establish a continuing tort and I join the Court’s Opinion with respect to Issues Three and Four. I join the Court’s resolution of Issue Two and much of the discussion, as I also agree that the record reveals genuine issues of material fact on whether contamination continues to migrate. I do not join the Court’s discussion of Issue One, and I would not situate migration as a component of abatability as the Court does in that section.
¶81 In Burley, we were tasked with explaining how three factors — stabilization, migration, and abatability — bear on continuing nuisance doctrine. We explained the importance of these factors through the prism of their relation to the “one consistent theme [discerned from] the historic decisions of this Court to evaluate whether a nuisance should be classified as temporary or permanent: whether the injury is sufficiently complete to ascertain permanent damages.” Burley, ¶ 41. Our decision in Burley reflects that stabilization, migration, and abatability each bear independently on whether an “injury is sufficiently complete to ascertain permanent *533 damages.” Burley, ¶ 41.1 would not abandon that analysis today.[1]
¶82 Both the Court’s Opinion and Justice Rice’s Dissent barely mention the concept of stabilization. The neglect of this factor is understandable after Burley, in which we simply assumed from the certified question that the pollution had stabilized because the concentration of the pollutants was no longer increasing. Burley, ¶ 2. We proceeded to analyze, and ultimately rejected, BNSFs argument that the stabilization of contamination provides a “bright line rule” on whether a nuisance is permanent or temporary. Burley, ¶ 51.
¶83 But our precedent, including Burley, reflects that stabilization is not as narrow a concept as the issue before us in Burley. Rather, when referring to stabilization, we often have focused on whether the injury itself is stable or changing. See Burley, ¶ 21 (“The concept of an injury having ‘stabilized’ first appears in Blasdel”) (emphasis supplied).
¶84 For instance, in Graveley I, where lead batteries were not increasing but were removable, we held that the nuisance was continuing in that “a new cause of action may arise each time a cow becomes ill or dies as a result of lead poisoning.” In other words, the injury — the cows becoming sick or dying — had not stabilized, so the injury was not complete, and the tort was continuing. Graveley 1, 240 Mont. at 25, 782 P.2d at 375. In Haugen Trust, we stated that the “situation” had “not stabilized” not only because the nuisance itself was fluctuating (through intermittent floods), but also because the extent of the damage depended on “the condition” of the basement at the time of each occurrence. Haugen Trust, 204 Mont. at 513, 665 P.2d at 1135. The “condition” of the basement “presumably” referred to the extent to which the basement was “finished,” what “personal items” were “stored” there, and whether the basement had “dried completely since the previous flooding.” Burley, ¶ 27. In other words, in Haugen Trust, there was a continuing tort because the injury was still developing. Haugen Trust, 204 Mont. at 513, 665 P.2d at 1135. And in Burley, we discussed Shors in the context of stabilization, noting that in that case where the nuisance was easily abatable, “[a] new cause of action arose *534 each day that the gate obstructed Shors’s free use of his easement.” In other words, the injury had not stabilized because the nuisance was continuing to inflict a new harm whenever Shors encountered it. Burley, ¶ 33 (citing Shors, 221 Mont. at 397, 720 P.2d at 244).
¶85 This Court did not even use the term “migration” in its continuing tort analysis before Burley in 2012, and did so then only at the behest of the Federal District Court’s certified question. See Burley, ¶ 2. Of the Montana cases cited in Burley’s migration analysis, Burley, ¶¶ 69-72, none in fact employ the term “migration” — and most instead employ the term “stabilization” or a variation thereof — to describe what is at base common phenomena: uncertainty or lack of completeness in injuries. See, e.g., Blasdel, 196 Mont. at 426, 640 P.2d at 894.
¶86 Based on the foregoing, I would conclude that migration and stabilization both are “important factor[s],” Burley, ¶ 73, that bear on whether an injury is sufficiently complete or whether it is dynamic and subject to change. Justice Rice’s Dissent, in my view, proffers a similar theory: that our jurisprudence requires a recurring injury — which may be demonstrated through evidence of migration or lack of stabilization — for a continuing tort to fie. I depart from Justice Rice’s analysis[2] in interpreting the concept of stabilization, which in our jurisprudence is broader than merely the stabilization of *535 contamination. Whether the injury has stabilized is what we are after. And rightly so. Our stabilization jurisprudence recognizes the unique nature of environmental harm and the nuisance cause of action. Environmental harm has the ability to affect disparate persons long after the conduct creating it has occurred, and nuisance focuses on interference with a landowner’s use and enjoyment of her property. Put these two together and it means that an environmental injury may not be sufficiently complete to ascertain permanent damages until the nuisance is in fact abated (if it reasonably can be), and is no longer affecting the landowner’s property interests. See Opinion, ¶ 22.
¶87 Where I believe the Court goes wrong is in situating migration — and, by implication, stabilization — within reasonable abatability- As we stated in Burley, the key question “in evaluating] whether a nuisance should be classified as temporary or permanent” is “whether the injury is sufficiently complete to ascertain permanent damages.” Burley, ¶ 47. By putting all the eggs in the “reasonably abatable” basket, the Court focuses exclusively on the second element of this standard, dealing with whether damages are “permanent.” Stabilization and migration are independent factors because they bear directly on the first element of the standard — whether the injury is “complete.” See Burley, ¶ 15 (noting 58 Am. Jur. 2d Nuisances § 296’s description of nuisances as temporary when the “injury is not complete” because the injury depends upon things like “its continuance and uncertain operation of the seasons or of the forces set in motion by it.”). Moreover, for the reasons stated in Justice Rice’s Dissent in ¶¶ 111-12, and 116, situating stabilization and migration within reasonable abatement is not consistent with Burley or with our prior jurisprudence. We could have situated migration within abatability in Burley, but we chose not to, and for good reason. See Burley, ¶ 89 (listing the factors bearing on reasonable abatability, of which migration is not one).
¶88 Nonetheless, because I agree that proving migration is not required for a continuing nuisance, and that Plaintiffs in any event have a raised genuine issues of material fact both with respect to migration and reasonable abatement, I concur with the Court’s decision to remand for a jury’s consideration of those factors. I also agree with the Court that, if the jury does not find a continuing tort, the discovery rule does not toll the statute of limitations in this case.

 Justice Rice’s Dissent posits that the “complained of injury” in a continuing tort must be both “(1) recurring and (2) remediable,” and would analyze claims by that lodestar. Dissent, ¶ 103. Although differently phrased, this is essentially the same standard that we employed in Burley and that I employ today — “whether the injury is sufficiently complete to ascertain permanent damages.” Whether the injury is sufficiently complete speaks to whether the injury continues to occur (the Dissent’s first factor) and whether damages are permanent speaks to whether the injury is remediable (the Dissent’s second factor).

I also depart from Justice Rice’s Dissent regarding how the discovery rule factors into our analysis of the statute of limitations for alleged continuing nuisance and trespass claims. Dissent, ¶¶ 101-102, 120. Justice Rice suggests that a continuing nuisance or trespass must meet the statutory discovery exception in order to escape the statute of limitations bar. Dissent, ¶ 102. But the statute also prescribes the general “accrual rule” for commencing the period of limitation. Section 27-2-102(lXa), (2), MCA. “The discovery rule begins the statute of limitations when the plaintiff discovers or should have discovered the negligent act.... The statute of limitations does not begin to run under the accrual rule until all elements of the claim have occurred.” Ehrman v. Kaufman, 2010 MT 284, ¶ 12, 358 Mont. 519, 246 P.3d 1048. We addressed application of the discovery rule in Burley and disposed of it unanimously: “tTlhe discovery rule definitively would bar a property contamination tort action at the expiration of the limitations period only where the injury had become permanent in the sense that the injury no longer reasonably could be abated, or had abated to a point where permanent damages could be ascertained.” Burley, ¶ 47. The continuing tort doctrine relates to the accrual of the cause of action, which occurs only when the right to maintain an action on the claim is complete. Section 27-2-102(l)(a), MCA. In the context of a continuing nuisance or trespass, this occurs when the injury is sufficiently complete to ascertain permanent damages. Burley, ¶ 41. See Blasdel, 196 Mont. at 426, 640 P.2d at 894 (holding that a cause of action for a permanent taking did not accrue until the water table had “stabilized” in 1960).